United States Court of Appeals,

Fifth Circuit.

No. 94-60446

Summary Calendar.

Michael Ray McKEE, Plaintiff-Appellant,

v.

Leroy BRIMMER, et al., Defendants,

Reid Pulpwood, Inc., Defendant-Appellee.

Dec. 5, 1994.

Appeal from the United States District Court for the Northern District of Mississippi.

Before SMITH, EMILIO M. GARZA and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Michael Ray McKee ("McKee") appeals from a summary judgment granted in favor of Reid Pulpwood, Inc. ("Reid"), in which the district court found that Reid's relationship with the party responsible for McKee's damages was that of independent contractor. We affirm.

FACTS AND PROCEDURAL HISTORY

Jessie Doubleday, doing business as Doubleday Logging ("Doubleday") began negotiations with Magnolia Farms for a contract to cut and haul timber. In March 1991 Doubleday approached Reid and offered to sell Magnolia Farms timber to Reid. Magnolia Farms' owners were willing to sell their timber, but wanted a contract with someone with $1,000,000 of liability insurance coverage, which Doubleday could not provide.

On April 8, 1991, Reid entered into a Hardwood Saw Timber Sale

Agreement with Magnolia Farms. Reid then made a verbal agreement with Doubleday for Doubleday to cut and haul the timber pursuant to the Reid-Magnolia Farms contract. This was the first and only time Reid contracted with Doubleday. Reid paid Doubleday on a production basis for timber Doubleday cut and hauled to Reid's purchasers. Reid made no loans or advances to Doubleday, and did not deduct any taxes from the payments. Doubleday used its own equipment, trucks, fuel and employees to do the job and Reid made no inspections of Doubleday's equipment or work. There is no evidence in the record that Reid had the right to control or actually controlled the time, manner or routes used in hauling the timber to Reid's purchasers, the aspect of Doubleday's work from which McKee's injury arose.

On May 22, 1991, around 5:00 a.m., Leroy Brimmer, a Doubleday employee, was operating a tractor-trailer owned by Doubleday loaded with logs cut from Magnolia Farms. As he entered Interstate Highway 55 South in Panola County, Mississippi, he collided with McKee's truck, causing McKee both personal injury and property damage.

McKee sued Brimmer, Doubleday and Reid to collect damages. Doubleday defaulted and Brimmer filed an answer *pro se.* Both Doubleday and Brimmer are uninsured and judgment proof. After discovery, McKee filed a motion for partial summary judgment on the issue of Reid's liability for the wrongful acts of Brimmer/Doubleday based on the doctrine of *respondeat superior.* Reid responded and filed its own motion for summary judgment

2

requesting a dismissal, claiming that Brimmer/Doubleday were independent contractors, thus Reid was not liable for their acts.

The district court denied McKee's motion and granted summary judgment for Reid, holding that Doubleday was an independent contractor and Reid was not liable for Doubleday's wrongful conduct.

## STANDARD OF REVIEW AND CHOICE OF LAW

We review a district court's ruling on motion for summary judgment *de novo,* applying the same standards as those that govern the district court's determination. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 79 (5th Cir.1987). Summary judgment must be granted if the court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). To ascertain whether genuine issues of material fact are present in this Mississippi based diversity action, we look to the substantive law of Mississippi. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 177-78 (5th Cir.), *reh'g denied,* 920 F.2d 259 (1990). We must view the evidence in the light most favorable to McKee, the nonmoving party. *Barhonovich v. American Nat. Ins. Co.,* 947 F.2d 775 (5th Cir.1991).

## DID THE CONTRACT MAKE REID LIABLE FOR DOUBLEDAY'S NEGLIGENCE?

Generally, an employer is liable for the negligent acts of its employee[1] done in the course and scope of his employment under

---

[1]The employer/employee relationship is sometimes referred to as the master/servant relationship. See *Richardson v. APAC-Mississippi, Inc.,* 631 So.2d 143, 148 (Miss.1994). For purposes

3

the doctrine of *respondeat superior,* but an employer is not liable for the negligence of an independent contractor. *W.J. Runyon & Son, Inc.,* 605 So.2d 38, 45 (Miss.1992).

For many years Mississippi engaged in an elaborate factoring analysis to determine whether or not one was engaged in an employer/employee or independent contractor relationship. In *W.J. Runyon & Son, Inc. v. Davis,* 605 So.2d 38 (Miss.1992), the Mississippi court moved to a singular "right to control" test. However, in *Richardson v. APAC-Mississippi, Inc.,* 631 So.2d 143 (Miss.1994), the court overruled *Runyon* to the extent that it was inconsistent with *Richardson* and moved back to a factoring analysis. Through all the changes, the right to control and actual control have always been primary factors. As the court observed, "At last, and in any given case, it gets back to the original proposition whether in fact the contractor was actually independent." *Richardson,* 631 So.2d at 148. Where the facts are undisputed, determining the type of relationship is a legal question. *Id.* at 152.

McKee argued in his motion for summary judgment that the contract between Reid and Magnolia Farms imposed on Reid an obligation and corresponding right to control Doubleday. The district court rejected that argument, finding that the relevant inquiry was to determine what type of relationship existed between Reid and Doubleday and not the relationship between Reid and

of clarity, this opinion will use the term "employer/employee relationship."

4

Magnolia Farms. McKee claims that the court below erred by not assigning controlling weight to the contract, citing four Mississippi cases that looked to a written contract in determining parties' legal relationships. These cases all involve a contract to which the alleged employer and the alleged employee were parties[2], and are not authority for the proposition that the court should examine a contract between A and B to determine whether C is the employee of B.

McKee's argument hinges on the theory that Reid's contractual duties to Magnolia Farms gave Reid the power to control Doubleday. Although Reid may have owed certain contractual obligations to Magnolia Farms, this contract does not purport to, and cannot, give Reid control over Doubleday, since Doubleday was not a party to the contract. We, therefore, hold that the district court did not err in finding that the contract was irrelevant to the inquiry here, which was to determine what type of relationship existed between Reid and Doubleday.

WAS THERE A FACT ISSUE THAT PRECLUDED SUMMARY JUDGMENT?

In addition to the basic question of control versus independence, Mississippi considers the following factors relevant in determining if a relationship is that of employer/employee or independent contractor:

Whether the principal master has the power to terminate the

_____

[2]See *Richardson v. APAC-Mississippi, Inc.,* 631 So.2d 143 (Miss.1994); *Webster v. Mississippi Publishers,* 571 So.2d 946 (Miss.1990); *Magee v. Transcontinental Gas Pipe Line Corp.,* 551 So.2d 182 (Miss.1989); *Texas Co. v. Jackson,* 174 Miss. 737, 165 So. 546 (1936).

contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees.

*Richardson v. APAC-Mississippi, Inc.,* 631 So.2d 143, 148 (Miss.1994) (quoting *Kisner v. Jackson,* 159 Miss. 424, 132 So. 90 (1931)).

McKee contends that the evidence before the court created a genuine issue of material fact on the issue of the proper characterization of Reid's relationship with Doubleday. McKee relies on the following evidence:

* The written contract between Reid and Magnolia Farms.

For the reasons set out above, the contract is irrelevant to the issue.

* Doubleday was covered on Reid's workers' compensation insurance. McKee relies on Mr. Reid's statement during a deposition that "Had Mr. Brimmer's case been reported as far as getting injured, knowing my workman's comp company, they would have covered him. They've never refused anybody. The way they look at it, if they are doing a job on behalf—of course, they're going to cover anyway."

Although Mr. Reid's statement may be some evidence that Reid's worker's compensation insurance might have covered McKee's injuries, there is no evidence that the policy covered only Reid's "employees," as defined by Mississippi *respondeat superior* law, so

6

as to create a fact issue concerning the employer/employee relationship between Reid and Doubleday.

* There was no definite length of time that Doubleday would render services to Reid and Reid could terminate the arrangement at will. Further, the Reid/Doubleday agreement was not in writing.

Neither of these facts address the central issue of independence. The record conclusively demonstrates that Reid had no duty or ability to control Doubleday or Doubleday's employees. Neither the indefinite length of their agreement nor the fact that it was not a written agreement is a disputed issue of material fact. They are simply facts that appear in the record that do not change the legal conclusion that Doubleday was Reid's independent contractor.

## McKEE'S PUBLIC POLICY ARGUMENT

The Mississippi Supreme Court in *Richardson* added an explicit factor which had previously been implicit to the balancing test used in determining the nature of a relationship:

> When, however, third parties are adversely affected, this Court will carefully scrutinize the contract to see if public policy should permit the transformation of an ordinarily employer/employee relationship into that of an independent contractor. A necessary condition precedent for the application of this factor, however, is that the party challenging the claimed relationship will be adversely affected, and denied an adequate legal remedy.

*Richardson,* 631 So.2d at 150.

McKee argues that Reid was aware of the poor financial condition of Doubleday at the time of their agreement and so should be liable for allowing Doubleday to operate without adequate insurance. Further he claims that he will be denied an adequate

7

remedy at law if he is barred from recovering from Reid because Brimmer and Doubleday are judgment proof and uninsured.

The district court found that Doubleday was clearly performing work as an independent contractor when the accident occurred and Reid should not be held liable for damages to the plaintiff simply because McKee had the misfortune to be involved in an accident with an uninsured independent contractor performing work for its principal. We agree.

The public policy factor from *Richardson* becomes an issue when the relationship between the alleged employer and the alleged employee would "ordinarily" be characterized as that of an employer/employee, but they have a contract which defines their relationship as that of independent contractors. In that case, the court will scrutinize the contract to see if the parties should be allowed to transform an employer/employee relationship into that of an independent contractor. *Richardson,* 631 So.2d at 150. In essence, an employer will not be allowed to escape liability by drafting a contract which labels its employee an independent contractor, but retains employer-like control over him. Since the evidence establishes that Doubleday was an independent contractor, and there is no evidence of an attempt by Reid to control Doubleday through a written contract or otherwise, McKee's public policy argument fails.

CONCLUSION

For the foregoing reasons, the district court's summary judgment in favor of Reid is AFFIRMED.

8