# UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

_____

No. 00-60150

_____

COOPER INDUSTRIES, INC,

                                        Plaintiff - Appellee - Cross - Appellant,

versus

TARMAC ROOFING SYSTEMS, INC; ET AL,

                                        Defendants.

TARMAC ROOFING SYSTEMS, INC,

                                        Defendant - Counter Defendant - Cross
                                        Defendant - Cross Claimant -
                                        Appellant - Cross - Appellee,

versus

INTERNATIONAL FIDELITY INSURANCE COMPANY,

                                        Defendant - Counter Claimant - Cross
                                        Claimant - Cross Defendant -
                                        Appellee - Appellant,

MOISTURE PROTECTION ASSOCIATES, INC,

Appeals from the United States District Court
For the Southern District of Mississippi

January 7, 2002

Before EMILIO M. GARZA and PARKER, Circuit Judges, and HINOJOSA[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Cooper Industries, Inc. ("Cooper") sued Tarmac Roofing Systems, Inc. ("Tarmac") and International Fidelity Insurance Co. ("IFIC") for damages arising from the installation of a roof on Cooper's Vicksburg, Mississippi manufacturing plant. A jury found Tarmac liable to Cooper for negligence, breach of contract and warranty, and IFIC liable to Cooper for negligence and breach of contract. Tarmac and IFIC each contest their liability and the amount of damages awarded. We REVERSE the district court's decision on Tarmac's Rule 50 motion, but AFFIRM the district court's decisions as to IFIC.

**I**

Cooper hired Moisture Protection Associates, Inc. ("MPA"), a roofing consulting firm, to advise it regarding the roof's installation, and to monitor the installation process. MPA, *inter alia*, assisted Cooper in soliciting bids for the roofing contract and devising the following conditions for prospective contractors: (1) prove that they were trained by one of the membrane manufacturers to install the membrane; (2) agree to install the membrane in accordance with the manufacturer's specifications, and obtain the manufacturer's approval; (3) promise to procure a twelve-year labor

---

[*] District Judge of the Southern District of Texas, sitting by designation.

and materials warranty from the membrane manufacturer; and (4) obtain performance and payment bonds. Castro, the contractor chosen by Cooper, identified Tarmac as the manufacturer of the membrane Castro planned to use. Castro provided proof that Tarmac certified Castro as trained to install the Tarmac product, and Tarmac agreed that the project was satisfactory to proceed. Castro also obtained performance and payment bonds from IFIC.[2]

Shortly after the project began, Castro's owners died. While Castro continued to perform under the contract, IFIC hired a consultant to monitor the payment of Castro's bills. What occurred next is subject to dispute. IFIC asserts that it was informed that Castro had not made timely payment to some suppliers, and subsequently learned that Castro could not meet its payroll obligations. Thereafter, IFIC entered into an assignment agreement with Castro in which it received Cooper's payments to Castro in return for providing financial assistance to Castro. As a consequence of the financial assistance provided by IFIC, Castro was able to complete the project through its subcontractor, Weatherguard. Cooper, however, contends that after demands for payment were made, Castro defaulted and IFIC took over the contract, entering into a subcontract with Weatherguard to complete the project.

Under either theory, problems arose regarding the quality of Weatherguard's work. At one point, Cooper requested that IFIC remove Weatherguard from the project, but IFIC refused. IFIC's consultant, however, responded to Cooper's complaints by informing Cooper that IFIC remained committed to completing the project, that it would monitor Weatherguard's daily progress, and would procure another contractor to assist Weatherguard. IFIC then hired Canton Sheet Metal &

---

[2]     Other membrane manufacturers also certified Castro as a trained installer of their product, and the bid documents did not require the use of a certain manufacturer's product.

Roofing to complete the drainage system on the roof, and to perform any warranty work under the contractor's two-year "Roofing Guarantee," which was executed in IFIC's name as Castro's surety.

Upon completion of the project, IFIC obtained the Tarmac twelve-year workmanship and material warranty for Cooper. The warranty covered defects in the roof as long as the roof was installed in accordance with Tarmac's specifications. The Weatherguard representative signed the warranty application "[f]or Castro Roofing / International Fidelity Insurance Company" and listed "Castro Roofing C/O dba Castro RFG International Fidelity Insurance Company" as the contractor. On the warranty, "Castro Rfg Co. c/o Int'l Fidelity Ins. Co." was identified as the contractor. Tarmac asserts that it issued the warranty based on Weatherguard's representations, as it did not inspect the roof.

Less than a year after the roof was completed, it began to blister. For the first two years that the roof required repair, IFIC fulfilled its obligations under the contractor's warranty by paying to have the roof repaired. After the contractor's warranty expired, Cooper continued to make repairs. Thereafter, Cooper informed Tarmac that the Tarmac warranty covered the roofing repairs. After re-inspecting the roof, Tarmac denied liability, concluding that the contractor's failure to follow Tarmac's installation procedures necessitated the repair work. Next, Cooper informed IFIC that it would seek "liability damages against [IFIC], as surety for Castro."

Cooper repaired and replaced parts of the roof, and sued IFIC and Tarmac for the repair and replacement costs. The district court denied Tarmac's and IFIC's motions for summary judgment and judgment as a matter of law. The jury found IFIC liable for breach of contract and negligence, and Tarmac liable for breach of contract, negligence, and breach of warranty. The jury denied IFIC and Tarmac's cross claims for indemnification, and awarded damages of $1,640,000 for the repair and

-4-

replacement costs less betterments. The district court entered judgment against IFIC and Tarmac for $1,130,402. The court arrived at this amount by deducting the value of Cooper's use of the defective roof from the amount awarded by the jury.

**II**

We review a district court's Rule 50 determination de novo, "applying the same legal standard as the trial court." *Flowers v. So. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). Judgment as a matter of law is proper if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Fed. R. Civ. P. 50(a); *see Reeves v. Sanderson Plumbing Prods. Co.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). As the conduct giving rise to this action occurred in Mississippi, and our jurisdiction is predicated on the parties' diverse citizenship, we apply Mississippi substantive law. *See McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994).

**A**

Cooper charges Tarmac with negligence and breach of contract under a theory that Castro and Weatherguard were Tarmac's agents, making Tarmac liable for their acts and omissions. Tarmac contends that Cooper failed to produce any evidence that Castro and Weatherguard were Tarmac's agents, or should be treated as such. In Mississippi, "[t]he burden of proving an agency relationship is on the party asserting it." *Booker v. Pettey,* 770 So.2d 39, 45 (Miss. 2000). Cooper argues that the controlling law in Mississippi on the issue of whether Tarmac should be held responsible for Castro and Weatherguard's conduct is found in *Fedders Corp. v. Boatright*, 493 So.2d 301 (Miss. 1986). In *Fedders*, the Mississippi Supreme Court held a manufacturer of a heat pump liable for breach of an implied warranty of merchantability. The consumer in that case purchased the pump from

the manufacturer's authorized dealer, and the dealer installed the pump. According to the court, "Fedders manufactured and placed on the market a machine which required personnel of special skill and knowledge to install. Fedders[,] contracted with. . .[,and represented that] OH & CC [w]as its authorized dealer, . . . to sell and install its machines in residences[,] [and] OH & CC carried the Fedders sign." *Id*. at 307. The court noted that the "heat pump was not sold directly by Fedders to a consumer, with the consumer having the responsibility for its proper installation, but through an authorized dealer which made the installation." *Id*. at 308.

At first blush, *Fedders* appears to control this case, as the facts underlying that opinion are somewhat similar to the facts in this case. A close read of *Fedders*, however, indicates that the two cases are factually distinguishable. First, the consumer in *Fedders* purchased a specific product, i.e., a heat pump. To acquire this product, the consumer went to a dealer authorized by Fedders to carry its product, and bear its insignia. In the present case, the purchaser, Cooper, sought a new roof for its plant, and, therefore, shopped for a roofing contractor to perform roofing services—it did not shop for a product. Second, unlike the authorized dealer in *Fedders*, there was no evidence presented that Castro was a "dealer" in Tarmac's products, as Castro's business was selling a service not a product, and Castro was certified by a number of different manufacturers. Third, in *Fedders*, the court noted that the heat pump was sold by the manufacturer's dealer to a consumer to be used in a residence. Here, the Tarmac membrane was sold through a dealer to the plaintiff's contractor to be used in a commercial setting, and the plaintiff hired a roofing consulting firm to monitor the installation. Thus, the concerns that animated the court's holding in *Fedders*— that a manufacturer not avoid liability when its authorized dealer sells a piece of machinery, which requires special skill to install, to a consumer—do not arise in the case *sub judice*.

As *Fedders* does not control the outcome of this case, the district court's ruling denying Tarmac's Rule 50 motion is only proper if Cooper proved that under Mississippi's general agency law there was a legally sufficient evidentiary basis regarding the existence of an agency relationship between Tarmac and Castro/Weatherguard. We have previously noted that under Mississippi law, "[a]n agency relationship may be express or de facto. A de facto agency may be proven by the presence of three elements at the time of contracting: (1) '[m]anifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal,' (2) '[t]he agent's acceptance of the arrangement,' and (3) '[t]he parties understood that the principal will control the undertaking.'" *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 870 (5th Cir. 2000) (quoting *Forest Oil Corp. v. Tenneco, Inc.*, 626 F.Supp. 917, 921 (S.D. Miss. 1986)).

Cooper presented the following evidence regarding Castro/Weatherguard's alleged agency status: (1) Tarmac certified installers; (2) Tarmac sent a letter to Cooper stating that a number of its certified installers were bidding on the project and that a warranty would issue on the condition that the membrane was installed according to Tarmac's specifications; (3) Tarmac sent a letter to MPA confirming Tarmac's review of the site, stating that the project was satisfactory to proceed, and that Tarmac was sure MPA was "headed for a successful project"; (4) Tarmac visited the site a few times; and (5) Tarmac circulated a brochure within the roofing industry indicating that professionals installed the Tarmac product.

This evidence failed to establish a legally sufficient evidentiary basis as to whether Tarmac manifested that Castro/Weatherguard were its agents, or that Castro/Weatherguard agreed to serve as Tarmac's agents. The evidence showed that installers could be certified by numerous manufacturers, that Castro was certified by a variety of manufacturers, and that Tarmac certified its

-7-

installers because it issued a warranty for its product. The Tarmac brochure also does not suggest that Castro/Weatherguard were Tarmac's agents, as the brochure did not mention Castro/Weatherguard or state that Tarmac's certified installers were its agents. Further, there was no evidence presented that the individuals at Cooper who decided to hire Castro knew or relied on the brochure.

The evidence also failed to establish the exercise of control by Tarmac over Castro/Weatherguard. Although Tarmac sent letters to Cooper and MPA regarding its installers, the information contained in these letters was either related to the Tarmac warranty, or required by Cooper in its bid documents.[3] Moreover, there was no evidence that Tarmac received any revenue on the Cooper project apart from the revenue it received from the sale of the membrane, or that Tarmac could select the projects for its certified installers to perform. Finally, while a Tarmac employee visited the site a few times, the visits were for customer relations reasons. Cooper did not present evidence that during these visits Tarmac exercised any control over the installers. Therefore, there did not exist a legally sufficient evidentiary basis to submit the agency issue to the jury, and Tarmac's Rule 50 motion should have been granted.

**B**

Cooper also charged Tarmac with breach of express warranty. Tarmac moved for judgment as a matter of law pursuant to Rule 50(a), (b). Tarmac contended that it did not breach its warranty

---

[3] Although Tarmac only notes that the first letter contained information required by Cooper in its bid documents, our review of the bid documents suggests that the second letter also contained information that was required by Cooper in its bid documents, i.e., requiring the manufacturer to approve aspects of the installation process. Even if this were not the case, this letter would not have constituted a legally sufficient evidentiary basis to submit the case to the jury, as it does not suggest the purpose of Tarmac's review.

because Cooper's witnesses testified that the membrane was installed improperly, and Section 2 of Tarmac's warranty provides: "[t]he original installation of the roofing membrane must be installed in accordance with Tarmac's published specifications in order for this warranty to be effective." The district court denied Tarmac's motions, reasoning that Section 2 of the warranty was void as an unenforceable attempt to limit liability based on Miss. Code Ann. § 75-2-315.1(2), and *Fedders*.

As previously noted, *Fedders* does not control our decision in this case. Likewise, we find that § 75-2-315.1(2) does not dictate the result here. Section 75-2-315.1(2) provides: "[a]ny oral or written language used by a manufacturer of *consumer* goods, which attempts to limit or modify a *consumer's* remedies for breach of the manufacturer's express warranties, is unenforceable." (emphasis added). By its own terms, § 75-2-315.1(2) does not preclude our giving effect to Section 2 of the warranty because Cooper is a merchant, not a consumer. Cooper is considered a merchant because it hired a roofing consulting firm to monitor the roof installation. Under Miss. Code Ann. § 75-2-104, the expertise of the roofing firm is imputed to Cooper. *See* Miss. Code Ann. § 75-2-104 ("'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction *or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.*") (emphasis added). Further, the goods in question are not consumer goods, i.e., goods "used or bought for use primarily for personal, family, or household purposes." Miss. Code Ann. § 75-9-109; *see* Miss. Code Ann. § 75-2-103(3) applying Miss. Code Ann. § 75-9-109 to Chapter 2 of the Uniform Commercial Code. Consequently, § 75-2-315.1(2) does not prevent the limitation in the warranty from applying.

Cooper makes two arguments as to why the limitation in the warranty should not be read as an obstacle to its claim against Tarmac. First, Cooper claims that the contractor did not violate Tarmac's installation specifications. Cooper avers that the contractor was not required to follow Tarmac's specific procedures for installing the membrane, but rather, was only required to follow Tarmac's general outline for membrane installation.[4] Cooper argues that to hold otherwise would render the warranty provision covering claims arising from faulty workmanship useless.

Cooper's argument fails, as the testimony presented by *Cooper's* experts unequivocally established that Tarmac's installation procedures were violated. Therefore, pursuant to the terms of the warranty, the warranty was ineffective due to faulty workmanship. The workmanship provision of the warranty is not rendered meaningless because it covers only a narrow class of problems, i.e., workmanship defects that occur despite the fact that the contractor installed the material in accordance with the installation procedures set forth by Tarmac.

Second, Cooper asserts that a Tarmac representative stated that the warranty would issue if the installation was accomplished according to Tarmac's specifications. Accordingly, Cooper contends that regardless of whether the provisions of the warranty were met, when Tarmac issued the warranty, it became effective. We disagree. The fact that Tarmac issued a warranty does not undercut the provisions of the warranty detailing whether the warranty is operative. The warranty provides that its validity is contingent upon proper installation, and the warrantor is not bound by any statements not contained in the warranty. Thus, there did not exist a legally sufficient evidentiary

---

[4]     Cooper also argues that because the materials used were defective, Tarmac is liable. This argument fails, as Section 2(c) of the roofing warranty precludes all coverage if the roof was improperly installed.

basis regarding Cooper's warranty claim, and Tarmac's Rule 50 motion should have been granted.[5]

# III

## A

In the proceedings before the district court, IFIC requested summary judgment on the ground that Cooper's claims elapsed because its claims were not filed within the time specified by the performance bond or Miss. Code Ann. § 85-7-189. The district court denied IFIC's motion. We review the district court's summary judgment decision de novo, acknowledging that summary judgment is warranted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir. 2001). As all relevant conduct occurred in Mississippi, the law of Mississippi governs issues of substantive law. *See McKee*, 39 F.3d at 96.

IFIC argues that the district court erred in denying its motion for summary judgment when it held that, "IFIC may properly be sued under the Performance Bond and the Roofing Contract for those duties which were originally incumbent upon Castro as contractor." The district court arrived at this conclusion by determining that IFIC took over the contract upon Castro's default.[6] IFIC, however, asserts that it did not assume the contract, but rather, merely fulfilled its contractual bond obligation to remedy Castro's default by meeting Castro's financial obligations. By doing so, IFIC

---

[5] Due to our decision that Tarmac's Rule 50 motion should have been granted, we need not address Cooper's cross-claim for damages, nor Tarmac's request for indemnification.

[6] Since IFIC complains belatedly in its reply brief that Cooper did not declare Castro in default, this argument is waived. *See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993). Cooper's motion to strike is granted.

allowed Castro to complete the contract through its subcontractor, Weatherguard. Accordingly, IFIC contends that Cooper's claim is governed by the one-year statue of limitations prescribed for sureties in Miss. Code Ann. § 85-7-189, as opposed to the six-year statute of limitations for contractors found in Miss. Code Ann. § 15-1-41.

IFIC's argument turns in part on its interpretation of the performance bond. The performance bond provides:

> Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly
>
> 1) Complete the Contract in accordance with its terms and conditions, or
>
> 2) Obtain a bid or bids for completing the contract in accordance with its terms and conditions, and upon determination by Surety of the lowest possible bidder . . . arrange for a contract between such bidder and Owner, and make available as work progresses . . . sufficient funds to pay the cost of completion less the balance of the contract price.
>
> Any suit under this bond must be instituted before the expiration of two (2) years from the date on which the final payment under the contract falls due. No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein. . ..

IFIC reads the performance bond as affording IFIC three options upon Castro's default: (1) IFIC *may* remedy the default; or IFIC *shall* (2) take over and complete the contract; or (3) obtain a new contract for Cooper. IFIC does not contend that it obtained a new contract for Cooper, but asserts that it remedied Castro's default. For this to be correct, the default must have been one that, once remedied, allowed Castro to continue to perform under the contract. Any other interpretation of the

-12-

first option would render superfluous IFIC's other two options, i.e., completing the contract or obtaining a new contract for Cooper. *See L&A Contracting Co. v. So. Concrete Servs. Inc.*, 17 F.3d 106, 109 (5th Cir. 1994) ("A bond is a contract, and, therefore, a bond is subject to the general law of contracts."); *Glantz Contracting Co. v. Gen'l Elect. Co.*, 379 So. 2d 912, 917 (Miss. 1980) ("Courts must construe contracts so they give effect to all provisions."). Therefore, if Castro was unable to complete the contract, even with IFIC's financial assistance, then IFIC was required to complete the contract or obtain a new contract for Cooper.

In its motion for summary judgment, IFIC states that "Castro . . . began [installation], but it was unable to complete the work. Therefore, in accordance with the terms of the performance bond, International engaged Weatherguard, Inc., a roofing contractor, to complete the work using the Tarmac roofing system." Likewise, in Cooper's response to summary judgment, Cooper maintains that Castro was unable to complete the contract, and IFIC took over the contract. Although in its supplemental affidavits IFIC includes an affidavit of David Pletcher, IFIC's consultant, who contends that IFIC merely financed Castro's work on the project, it also included as an exhibit a report by Cooper's expert that states that Castro was unable to finish the project, and, therefore, IFIC retained Weatherguard to perform the work. From IFIC's admissions and the evidence, the district court did not err in denying IFIC's motion for summary judgment on the ground that IFIC did not take over the contract.

IFIC also contests the time period within which Cooper could bring its claims against IFIC, if IFIC took over the contract. We have not found, and the parties have not cited, any Mississippi cases that identify what time period governs a situation in which a surety takes over a construction contract, and the owner sues the surety/contractor for damages arising from construction

-13-

deficiencies.[7] We are therefore required to make an *Erie* guess as to how the Mississippi Supreme Court would decide this question. We concur with the district court's well-reasoned decision to apply the period set out in Miss. Code Ann. § 15-1-41,[8] which relates to claims arising from deficiencies in construction. If IFIC took over the contract, rather than invoking its contractual right to re-bid the contract, then IFIC subjected itself to liabilities associated with serving as contractor, such as claims arising from construction deficiencies. *See Hanberry Corp. v. State Bldg. Comm'n*, 390 So. 2d 277, 281 (Miss. 1980) (stating that surety that "assumed completion of [principal's] contract . . . stepped into the shoes" of its principal). In Mississippi, claims arising from construction deficiencies may be brought for six years from the time the owner accepts the property. Consequently, if IFIC took over the contract, then Cooper's claim is not time barred because Cooper filed its claim within § 15-1-41's six-year window.

IFIC asserts that Cooper's claim is not governed by § 15-1-41's six-year limitations period,

---

[7] In their brief, IFIC cites Mississippi cases stating that a surety may stand on the terms of its surety contract. We do not find that maxim in tension with our decision that § 15-1-41 provides the limitations period for Cooper's claims. Here, IFIC was held liable for injuries arising from its voluntary takeover of the contract, and, therefore, was not subject to duties or liabilities it did not willingly accept.

[8] Section 15-1-41 provides:

Actions arising from construction deficiencies

No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property . . . against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property *more than six (6) years* after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.

-14-

but rather, is subject to the two-year limitations period set out in the bond. Based on the analysis set forth above, we disagree that the bond's period governs. If IFIC elected to takeover the contract, it voluntarily subjected itself to a new set of liabilities apart from the bond. The liabilities IFIC incurred by acting as contractor are governed by § 15-1-41. Furthermore, the Mississippi legislature determined that the period set out in § 15-1-41 cannot be altered through contract. *See* Miss. Code Ann. § 15-1-5 (rendering "null and void" any contractual change to the limitations period.) Therefore, the limitations period in the bond is inapplicable.

IFIC also argues that the appropriate limitations period is not set out in § 15-1-41, but rather in Miss. Code Ann. § 85-7-189. Section 85-7-189 provides:

Suit on Bond; Commencement

When suit is instituted by *any such person* on a bond, it shall not be commenced until after the complete performance of said contract, and final settlement thereof and shall be commenced within one year after the performance and final settlement of said contract and not later; provided that if the contractor quits or abandons the contract before its completion suit may be instituted *by any such person including the owner on said bond* and shall be commenced within one year after abandonment and not later. But said period for the limitation of the institution of said action shall not begin to run until the obligee shall have made said final settlement or determined said abandonment and published notice thereof in some newspaper in said county, or if there be none in some newspaper having a general circulation therein. (Emphasis added).

IFIC reads § 85-7-189's phrase "including the owner on said bond" to indicate that owners are bound by § 85-7-189's limitations period, and, therefore, Cooper's claims are barred.

The district court determined, and we agree, that the period set out in § 85-7-189 does not apply to Cooper's action against IFIC. While IFIC is correct that § 85-7-189 refers to owners, the subset of owners included in the category of "any such person" is limited, as the statutory section

-15-

preceding § 85-7-189, § 85-7-187, indicates. *See Miss. Pub. Serv. Comm'n v. Mun. Energy Agency of Miss.*, 463 So. 2d 1056, 1058 (Miss. 1985) ("each section of the Code dealing with the same or similar subject matter must be read *in pari materia*"). Section 85-7-187, which provides a statutory right of action on the bond, makes clear that "any such person" means laborers and materialmen. *See* Miss. Code Ann. § 85-7-187 (providing that "any person supplying therein labor or materials shall have a right of action on said bond"). *See also Am. Fid. Fire Ins. Co. v. Athens Stove Works, Inc.*, 481 So. 2d 292 (Miss. 1985) (supplier of electric ranges brought suit under § 85-7-189 against surety); *Transamerica Ins. Co. v. Paine Supply Co.*, 194 So. 2d 490 (Miss. 1967) (materialman's claim on bond under a former version of § 85-7-189). Accordingly, § 85-7-189's reference to owners as part of the category of "any such person[s]" means owners who have acted as laborers or materialmen, i.e., owners who have supplied materials or labor to the project. As Cooper did not act as a laborer or materialman, § 85-7-189 does not apply to its claim. Thus, the district court was correct to deny IFIC's motion for summary judgment.

**B**

IFIC also moved for judgment as a matter of law at the conclusion of Cooper's case in chief, arguing that there did not exist a legally sufficient evidentiary basis to submit the case to the jury. The district court denied this motion. The following evidence was presented: (1) a letter from an IFIC attorney acknowledging that IFIC had to complete the contract because Castro informed IFIC that it could not complete it, and admitting that IFIC hired a construction consultant; (2) the warranty application signed by Weatherguard's representative as contractor for Castro/IFIC, listing "Castro Roofing c/o International Fidelity Insurance Company" as the roofing contractor; and (3) testimony that Castro could not complete the contract and IFIC did not re-bid the contract. While IFIC is

-16-

correct that none of Cooper's witnesses expressly stated that IFIC took over the contract, we do not see how this is determinative insofar as IFIC, via its attorney, admitted that it completed the contract upon Castro's default.[9]  Accordingly, a legally sufficient evidentiary basis existed to submit the case to the jury.

## C

IFIC asserts that the district court erred when it refused to give the jury IFIC's proposed instruction on damages.  According to IFIC, this failure and the district court's denial of IFIC's motions under Rule 50 and 59 were erroneous because the evidence was insufficient to support the jury's damage award. We "review[] a district court's refusal to provide a requested jury instruction for an abuse of discretion.  We will reverse the district court's decision 'only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense.'" *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001) (citations omitted).

The instruction IFIC requested provides:

> You are instructed that Cooper has the burden to prove its damages, if any, by a preponderance of the evidence.  You are also instructed that you must return a verdict against Cooper and in favor of International if you find that Cooper must resort to speculation or conjecture to determine whether or not the damages it claims it suffered resulted from the acts which it complains about or from some other cause or where it is impossible to say what of any portion of the damages, if any, result from the fault of International, Tarmac or Canton Sheet Metal and what portion if any, result from the fault of Cooper, including the fault of Moisture Protection.

---

[9]    IFIC also makes a general statement that Cooper offered no evidence of causation. IFIC did not expand on this argument, and the evidence in the record does not support this contention.

IFIC criticizes the district court's failure to adopt its instruction, maintaining that Cooper was obligated to prove which damages, if any, were caused by IFIC, as opposed to those caused by Castro/Weatherguard acting as Tarmac's agent. Any damages incurred prior to IFIC taking over the contract, IFIC urges, would be barred by § 85-7-189, or the bond. Furthermore, IFIC claims that its damage instruction meets the requirements outlined in *McClatchy*. IFIC avers that its instruction is a correct statement of the law, that the district court's instruction did not inform the jury that Cooper must prove its damages by a preponderance of the evidence, and that the jury was deprived of the "necessary guidance implicit in" the proposed instruction.

Assuming arguendo that IFIC's argument is not foreclosed by our decision that Castro/Weatherguard were not Tarmac's agents, we disagree that IFIC was entitled to this instruction. Although the district court's instruction does not state that damages must be proven by a preponderance of the evidence, at the beginning of the jury instructions the court informed the jury of the plaintiff's burden. *See United States v. Eargle*, 921 F.2d 56, 58 (5th Cir. 1991) (jury instructions must be read as a whole). In addition, IFIC's argument that the charge inappropriately allows the jury to hold IFIC liable for Castro/Weatherguard's conduct prior to IFIC taking over the contract is unavailing. As previously noted, when IFIC took over the contract it stepped into the shoes of its principal, thereby assuming its principal's duties, i.e., tendering to Cooper a roof that comported with the applicable standards. *See supra*, Section III A. Accordingly, IFIC fails to demonstrate that the district court erred in refusing to proffer IFIC's instruction to the jury.

## D

IFIC avers that the district court erred by using an incorrect method to calculate Cooper's damages. Pursuant to the reasoning of *Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300 (5th Cir.

1976) (applying percentage of useful life extension to property that had a longer useful life after repairs), IFIC moved to alter or amend the judgment under Rule 59 because the judgment failed to account for the percentage of useful life extension Cooper received by repairing or replacing the roof.[10] The district court denied IFIC's motion. We review that denial for an abuse of discretion. *Stye v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). As IFIC never argued to the jury that the *Freeport Sulphur* methodology applied, but instead consistently hinged its reduction of damages argument on a straight line depreciation method, we find the district court did not abuse its discretion in entering judgment based on the evidence presented by IFIC at trial.

## IV

For the reasons set forth above, we REVERSE the district court's denial of Tarmac's Rule 50 motion, and AFFIRM the district court's disposition of IFIC's motions.

---

[10]    IFIC also complains that the district court erred by entering final judgment against IFIC for the full amount of Cooper's damages. To the extent that IFIC's argument survives our decision regarding Tarmac, we agree that IFIC is liable for the full amount of damages awarded. Mississippi provides for apportionment of damages among joint-*tortfeasors* under the circumstances set out in Miss. Code Ann. § 85-5-7. IFIC is not entitled to apportionment of the damage award because IFIC's liability stemmed not only from its negligence, but also from its breach of contract. Because IFIC was liable for breach of contract, and § 85-5-7's apportionment provision only applies to damages incurred due to negligence, the district court's decision not to apportion is correct.