861 So.2d 358 (2003)
Jettie McCARY, Lillie Fulwiley, and John Isonhood, Appellants,
v.
Chris WADE and Wade Land Management, Inc., Appellees.
No. 2002-CA-01147-COA.
Court of Appeals of Mississippi.
December 16, 2003.
*359 H. Gregory Johnson, Hazlehurst, Ross Barnett, Jr., Jackson, Christopher D. Hemphill, Columbus, John G. Holaday, Jackson, George McDowell Yoder III, attorneys for appellants.
Aafram Y. Sellers, Edward J. Currie, Jackson, Michael V. Cory, attorneys for appellees.
Before SOUTHWICK, P.J., LEE, MYERS and CHANDLER, JJ.
LEE, J., for the Court.

PROCEDURAL HISTORY
¶ 1. This case concerns an August 1999 car accident involving the appellants and Dexter Myrick, who was employed by the appellees. The appellants filed their lawsuit in November 2000 and the appellees responded with a motion for summary judgment, which the trial court granted in April 2002.[1] The appellants now appeal to *360 this Court arguing that summary judgment was improper. We review their argument and find no merit; thus, we affirm.

FACTS
¶ 2. On August 2, 1999, appellants Jettie McCary and Lillie Fulwiley were riding in a van on their way home from work and were traveling north on Highway 25. The van was being driven by John Isonhood who was employed by Choctaw Maid Farms, the appellants' employer, to transport the workers from the facility to their homes. As Isonhood approached the intersection of Highway 25 and County Road, Grace Mills pulled out from County Road onto Highway 25 traveling south. However, Mills pulled out in front of another driver, Dexter Myrick, who was driving a logging truck. Myrick was forced to hit his breaks to avoid a collision with Mills, and this forced him into the opposite lane of traffic where he collided with the appellants' northbound van.
¶ 3. McCary incurred approximately $110,000 in related medical expenses and approximately $45,000 in past and future lost wages as a result of her injuries from the collision. She is totally disabled and has significant disfigurement to her lower body. Fulwiley incurred approximately $20,000 in related medical expenses, an estimated $20,000 in future medical expenses and approximately $100,000 in past and future lost wages.
¶ 4. McCary and Fulwiley filed suit against Myrick, Georgia Pacific Corporation, which was Myrick's employer, Mills, John Isonhood, Choctaw Maid Farms, Inc. which provided the van transportation, Chris Wade who had contracted with Georgia Pacific for sale of timber, and Wade Land Management which was Chris Wade's company.
¶ 5. A question arose concerning whether or not Myrick was acting as an employee of Wade at the time of the accident and, if so, whether Wade could be held vicariously liable for Myrick's actions. Details of the employment relationship are addressed in more depth in the following discussion.

DISCUSSION
I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT?
¶ 6. On appeal, the appellants primarily argue that the trial court erred in granting the appellees' motion for summary judgment. The appellants contend that sufficient evidence was presented to create genuine issues of material fact concerning whether Myrick was acting as an employee of Wade Land Management at the time of the accident.
This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.
Leslie v. City of Biloxi, 758 So.2d 430(¶ 5) (Miss.2000). In their motion for summary judgment Chris Wade and Wade Land Management ("WLM") argued that Myrick was an independent hauler for WLM and, therefore, WLM was not liable to the *361 plaintiffs/appellants via respondeat superior for Myrick's negligence in causing the accident.
The general rule is that the employer of an independent contractor has no vicarious liability for the torts of the independent contractor or for the torts of the independent contractor's employees in the performance of the contract. In determining whether a employer-employee or independent contractor relationship existed, especially where third parties are affected, courts are not confined to the terms of the contract, but may look as well to the conduct of the parties.
Owens v. Thomae, 759 So.2d 1117(¶ 22) (Miss.1999) (citations omitted). In addition to the general rule described in Owens, we have recognized many "tests" or aspects of a relationship to examine in determining whether a person is an employee or an independent contractor:
[W]hether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the working during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the sub employees and to fix their compensation; and whether he is obliged to pay the wages of said employees.
Miller v. Shell Oil Co., 783 So.2d 724(¶ 11) (Miss.Ct.App.2000). We look to the facts of this case de novo and apply the principles enunciated in Owens and Miller to determine whether Myrick was an independent contractor or an employee of WLM, such that summary judgment was or was not proper in this case.
¶ 7. WLM purchases timber and sells it to wood yards. In 1996, WLM contracted with Georgia Pacific to provide timber, and WLM in turn hired haulers to move the timber, one of whom was Myrick. Myrick and WLM entered into a contract in 1996 whereby Myrick would cut and haul lumber to Georgia Pacific for WLM. Myrick was not subject to any quotas set by WLM concerning delivery amounts, and Georgia Pacific would accept any amount of the specified lumber that Myrick chose to deliver.
¶ 8. In his deposition, which is included in the record, Chris Wade explained that Myrick bought his own timber, cut it, and hauled it all himself, and Wade never knew where or when Myrick was producing any wood until Myrick called him alerting that he had a load of logs to sell. Wade affirmed that "he didn't have to pay a cent" for Myrick's cutting operation and that he only used independent contractors because otherwise he would have to pay for the haulers' trucks and operation costs. Wade explained that to his knowledge Myrick had other contracts with companies to deliver wood, just the same as he had a contract with WLM.
¶ 9. Myrick testified in his deposition that he decided his own work hours, which days he would work, and where he would work. He exclusively made decisions concerning harvest, sorting, loading and transportation of the timber. Myrick stated that he owned all of the equipment *362 needed for his operation, including his two ton truck which he and his brother exclusively purchased, repaired and maintained, and he had never gotten a loan for his logging business. Myrick testified that on the day of the accident he had left Georgia Pacific and was en route to his home at the time of the collision. Under the previously described test for determining independent contractor status, we find Myrick's relationship with WLM to be that of an independent contractor and not employee/employer. Having so found, we next direct out attention to Richardson v. APAC-Mississippi, Inc., 631 So.2d 143 (Miss.1994), which the appellants cite in support of their argument.
¶ 10. In that case, Richardson's vehicle was hit in the left side by Berg McCandless as he ran a red light. Richardson, 631 So.2d at 144. Richardson sued APAC on the basis of respondeat superior claiming that McCandless was acting as an APAC employee at the time of the accident. Id. APAC filed a motion for summary judgment claiming that APAC was not McCandless's employer at the time of the accident, and the circuit court granted the motion. Id. at 146. Similar to facts in the present case, in Richardson, McCandless provided all of his own equipment, was responsible for maintenance and upkeep on the equipment, paid his own operating expenses, set his own hours and quotas, and was not under the control of APAC for any related decision-making. Id. at 144. The supreme court affirmed the trial court's finding that the relationship between McCandless and APAC was clearly that of independent contractor. Id. at 152.
¶ 11. Looking further to Richardson, the appellants direct our attention to Richardson's addition of a "public policy" test to determine liability. Id. at 150. The supreme court defined this new test as follows:
Today we explicitly add another factor in the balancing test, heretofore implicit. When a contract is made between two parties that as between themselves creates an independent contractor relationship and involves employment generally performed under a simple master/servant or employer/employee relationship, it will be upheld as between the parties. When, however, third parties are adversely affected, this Court will carefully scrutinize the contract to see if public policy should permit the transformation of an ordinarily employer/employee relationship into that of an independent contractor. A necessary condition precedent for the application of this factor, however, is that the party challenging the claimed relationship will be adversely affected, and denied an adequate legal remedy. In the absence of this, the right of parties to contract as they please is a constitutionally-protected right. Conversely, neither of the parties should be permitted to dispute a contractually-created independent contractor relationship between them when to do so adversely affects an injured third party.
Id. (citations omitted). The Richardson court found insufficient evidence was presented to show that McCandless was unable to pay or had insufficient insurance coverage to pay for Richardson's injuries; thus, the court failed to address the possible extension of liability to APAC. Id. at 151. In the present case, Myrick was shown to be bankrupt and without insurance coverage. Thus, the appellants claim that since Myrick was not insured and had no money to compensate them for their injuries, WLM should be made to pay in the interests of public policy.
¶ 12. The Fifth Circuit addressed the Richardson case in McKee v. Brimmer, 39 F.3d 94 (5th Cir.1994). In McKee, the *363 district court granted a summary judgment, finding the injured's relationship with the responsible party was that of independent contractor, and the Fifth Circuit affirmed. Id. at 98. The court cited the public policy rule from Richardson and surmised the following:
The public policy factor from Richardson becomes an issue when the relationship between the alleged employer and the alleged employee would "ordinarily" be characterized as that of an employer/employee, but they have a contract which defines their relationship as that of independent contractors. In that case, the court will scrutinize the contract to see if the parties should be allowed to transform an employer/employee relationship into that of an independent contractor. In essence, an employer will not be allowed to escape liability by drafting a contract which labels its employee an independent contractor, but retains employer-like control over him.
Id. (citations omitted). WLM's brief interprets McKee to say that the Richardson public policy exception does not serve as a "trump card" to hold in the hand to play when the facts do not create vicarious liability when the requisite relationship is not supported by the facts. Consequently, since the evidence presented shows Myrick was an independent contractor and there is no evidence of any attempt by WLM to control Myrick through written contracts or otherwise, the appellants's public policy argument fails.
¶ 13. The Richardson court cited to other cases in which the public policy test had, in fact, already been used. See Hobbs v. Int'l Paper Co., 203 So.2d 488 (Miss. 1967); Gulf Ref. Co. v. Nations, 167 Miss. 315, 145 So. 327 (1933) (Richardson) court disagreed with); Kisner v. Jackson, 159 Miss. 424, 132 So. 90 (1931). In those three cases, however, the persons causing the accident were labeled as independent contractors when the work they were doing actually fell into the relationship of employee/employer. Hobbs, 203 So.2d at 490; Gulf Ref. Co., 167 Miss. at 330-31, 145 So. at 333; Kisner, 159 Miss. at 429, 132 So. at 91. In the present case, the Richardson public policy test is not applicable because Myrick undeniably was an independent contractor in his work with WLM. Unlike Hobbs, Gulf Refining Co., and Kisner, we find no confusion as to Myrick's role as working independently of WLM as employer.
¶ 14. In an alternative argument, the appellants argue that Myrick and WLM were involved either in a relationship of principal/agent or involved in a joint venture together. We find neither of these arguments persuasive. Having conducted a de novo review of this matter, we find the court did not err in granting summary judgment, and we affirm.
¶ 15. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS AND MYERS, JJ., CONCUR. KING, P.J., IRVING AND CHANDLER, JJ., CONCUR IN RESULT ONLY. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] The summary judgment was granted concerning defendants Chris Wade and Wade Land Management; however, they were not the sole defendants in this matter. Pursuant to Mississippi Rules of Civil Procedure 54(b), "when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment." The April 2002 judgment did not dismiss Chris Wade and Wade Land Management pursuant to the rule, but in June 2002, the court did enter final judgment pursuant to the rule, thereby giving this Court jurisdiction to review this matter on appeal.