# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60640

United States Court of Appeals
Fifth Circuit

**FILED**
February 28, 2019

Lyle W. Cayce
Clerk

CLARENCE SHED,

> Plaintiff - Appellant

v.

JOHNNY COLEMAN BUILDERS, INCORPORATED; JOHNNY COLEMAN, doing business as Johnny Coleman Companies, L.L.C.; SHERRY MAGGIO FLYNN,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:16-CV-171

Before STEWART, Chief Judge, SOUTHWICK and ENGELHARDT, Circuit Judges.

PER CURIAM:*

The district court granted summary judgment denying the plaintiff's claim that he was injured while residing in a house rented from the defendant. Nothing in the record supports the contention that the plaintiff's injury was a result of any breach of the defendant's obligations to him. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60640

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Clarence Shed rented a home located in Southaven, Mississippi, from Johnny Coleman Companies, LLC. Shed signed a lease agreement on December 4, 2013, and Sherry Flynn signed on behalf of Coleman. In January 2014, Shed discovered that his shoes were covered with a "green substance." About March 25, 2014, Shed informed Flynn that there was a mold problem in the master bathroom closet, and that he was treated by a physician for symptoms that could be related to mold exposure. Flynn inspected the premises the next day. She noticed stains on the carpet, that the carpet was damp, a musty smell, swirls of green, and wet areas on the exterior walls. Flynn contacted a roofer because she believed there was a leak in the roof causing rainwater to drain into the attic.

On March 27, the roofer confirmed there was a water leak at the water heater vent in the roof. Neither party disputes that this leak was caused at least in part by a recent hard rain storm. The next day, on March 28, Shed arranged for a home inspector to evaluate the house for mold. The inspection confirmed elevated levels of mold spores in the master closet. On April 2, Shed told Flynn about the results of the inspection and said he would have to move out. The defendant terminated the lease on April 6, and Shed moved out.

On April 11, Dr. Cheryl Winfrey examined Shed. The doctor's medical notes state that Shed had a rash, that he had good air movement, and that he had been exposed to mold. On April 25, Shed was examined by Dr. Joy Burbeck and diagnosed with shortness of breath and reactive airways. Dr. Burbeck believed those problems were "most likely precipitated by heavy black mold exposure." Finally, on April 27, Dr. Keith Berndston examined Shed and concluded that his lower legs and arms had rashes that were consistent with known allergic reactions to the mold that was "found in the Mississippi home." Dr. Berndston also wrote in his medical notes that Shed believed he developed

2

No. 17-60640

a chronic inflammatory response to mold when he lived in the house rented from Coleman.

In July 2016, Shed brought suit against Coleman in the United States District Court for the Northern District of Mississippi, claiming, among other things, breach of contract, fraud and negligent misrepresentation, tortious breach of the implied warranty of habitability, and negligence per se, all stemming from the mold discovered in the rental. After initial discovery, Coleman moved for summary judgment. In August 2017, the district court granted the motion, primarily based on Shed's lack of evidence of causation. Shed filed a timely appeal.

## DISCUSSION

On appeal, we review the grant of "summary judgment *de novo*, applying the same legal standards as the district court applied to determine whether summary judgment was appropriate." *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005). Summary judgment should not be granted unless after "viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003). Because our review is *de novo*, we need not agree with the district court's analysis but instead may affirm "on any grounds supported by the record." *Lifecare Hosps.*, 418 F.3d at 439.

Shed on appeal presents arguments only about his negligence and implied warranty of habitability claims for both personal injury and property damage. Thus, we do not discuss any of the other rejected claims. In this diversity suit, we apply Mississippi law to the claims. *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994). That state's Supreme Court has recognized an implied warranty of habitability in rental housing, requiring landlords to provide "reasonably safe premises at the inception of a lease, and to exercise

3

reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant, unless expressly waived by the tenant." *Sweatt v. Murphy*, 733 So. 2d 207, 210 (Miss. 1999) (quoting Justice Sullivan's concurring opinion in *O'Cain v. Harvey Freeman & Sons*, 603 So. 2d 824, 833 (Miss. 1991)).[1]  The implied warranty of habitability permits recovery under both contract and tort law. *Sample v. Haga*, 824 So. 2d 627, 631 (Miss. Ct. App. 2001).

To state a claim of negligence or a breach of the implied warranty of habitability, Shed is "required to show duty, breach, causation, and damages, and [Coleman is] entitled to raise the standard tort defenses, such as contributory negligence, unforeseeability or intervening cause." *Murphy*, 733 So. 2d at 211-12 (quoting *O'Cain*, 603 So. 2d at 833) (Sullivan, J., concurring)). Coleman argues that Shed produced no evidence to show that its conduct proximately caused Shed's injuries.  Coleman argues that Shed was required but failed to produce an expert opinion that the mold in the home caused Shed's injuries or that even linked its actions to the spread of mold in the home.

The first claim we analyze is the one for physical injury arising from the presence of mold in the leased premises.  Such a claim is one for a toxic tort. To establish causation in toxic tort cases, general causation first must be shown, then specific causation. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).  General causation means that a substance is capable of causing a particular injury; specific causation looks to whether the substance caused the specific plaintiff's injury. *Id.*  Shed has inferentially provided some evidence of general causation in the form of his medical records, where a doctor stated that his injuries were consistent with mold exposure.  However, while that statement can be viewed as evidence supporting general causation, the

---

[1] Justice Sullivan's concurrence was joined by a majority of the justices.

medical records do not contain sufficient information to show that the mold in the Coleman rental home caused his specific injuries.

Shed attempts to analogize his case to *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999). There the court found that an industrial hygienist's expert testimony was sufficient to establish a dispute of material fact on causation in a toxic tort case. *Id.*at 668-72. That case differs materially from this one. The expert in *Curtis* was aware that the levels of the toxic substance to which the plaintiff was exposed greatly exceeded the permissible exposure level. *Id.* at 670-72. Here, there is no evidence or testimony from the doctors who treated Shed concerning the levels of exposure to mold experienced by Shed. Furthermore, unlike the expert in *Curtis* who concluded that the toxic substance had caused the plaintiff's injury, Shed's doctors observed that the injuries were *consistent* with mold exposure without concluding that mold was in fact the cause. Therefore, Shed has failed to produce sufficient evidence to create a material issue of fact that the mold in his rental unit caused his physical injury.

Shed also has a property damage claim. A landlord has liability when it fails "to exercise reasonable care to repair dangerous conditions upon notice of their existence by the tenant." *Murphy*, 733 So. 2d at 211 (quoting *O'Cain*, 603 So. 2d at 833 (Sullivan, J., concurring)). Further, a "landlord/lessor must have actual or constructive knowledge of the defect and a reasonable opportunity to make repairs." *Dulin v. Sowell*, 919 So. 2d 1010, 1013 (Miss. Ct. App. 2005). In *Dulin*, the tenant claimed that moisture on the concrete floor of the property's garage, which was a recurring problem, caused her to slip and fall. *Id.* at 1012. The tenant had never informed the landlord of the problem, and there was no evidence that the landlord was otherwise aware of the condition. *Id.* at 1013. The claim was properly denied. *Id.*

No. 17-60640

Here, Shed has produced no evidence that Coleman should have discovered the roof defect that caused the water leak through the exercise of reasonable care or had actually been aware of it prior to being notified by Shed in late March 2014.  To the contrary, the only evidence on the point is that it was not until after a hard rain storm that the defect was revealed.  Further, it is undisputed that Coleman addressed the mold problem once notified.  *See Dulin*, 919 So. 2d at 1013 (holding that a landlord must be given a reasonable opportunity to repair a defect upon notice).

AFFIRMED.