# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00638-SCT

*STEVEN LESLIE SWEATT*

*v.*

*PAUL MURPHY AND THERESE MURPHY*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/97 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DEREK ARTHUR WYATT |
| ATTORNEYS FOR APPELLEES: | BOBBY ATKINSON |
| | JAMES R. FOSTER, II |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 1/28/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE FACTS AND CASE

¶1. In April, 1995 Steven Sweatt ("Sweatt") and his wife began renting a house in Gulfport from Paul and Therese Murphy. On April 30, 1995, Sweatt was injured on the property when a porch swing on which he was sitting fell due to a failure in the hook which connected it to the ceiling. Following the accident, Sweatt was diagnosed with a lumbar disc herniation, but the Murphys, then living in Sweden, denied any responsibility for his injuries. The Sweatts gave notice to Gloria Murphy, Paul Murphy's mother, that they were moving out and requested the return of the security deposit. The Murphys refused to return the deposit.

¶2. Sweatt filed a complaint in circuit court, alleging that the Murphys had failed to comply with the provisions of the Residential Landlord and Tenant Act ("RLTA"), Miss. Code Ann. § 89-8-1, *et seq.* (1972), specifically the RLTA's mandate to landlords/owners to comply with applicable "housing codes affecting health and safety." After discovery, Sweatt filed a motion for summary judgment, seeking an instruction that the Murphys were negligent *per se* in violating the provisions of the RLTA and/or the

Housing Code. The trial judge denied this motion, as well as a motion filed by Sweatt to add Gloria Murphy as a defendant and to assert additional claims against the defendants.

¶3. On March 24, 1997, the case went to trial, and the trial judge refused to give any instructions based upon the RLTA and/or the Standard Housing Code. The jury returned a verdict for the Murphys as to the personal injury claim, but the jury returned a verdict for $700 (the amount of the security deposit) for Sweatt on his contract claim. Feeling aggrieved, Sweatt appeals to this Court.

### LAW

**I. Whether the trial court erred in failing to apply the Mississippi Residential Landlord and Tenant Act, Miss. Code Ann. § 89-8-1 et seq. (1972, as amended) as controlling law.**

**II. Whether the trial court erred in failing to apply the provisions of the Standard Housing Code, adopted by the City of Gulfport in City Ordinance No. 1974, and compliance with which is made mandatory on all residential landlords in Mississippi by the Residential Landlord and Tenant Act, Miss. Code Ann. § 89-8-1 et seq. (1972, as amended), as controlling law.**

**III. Whether the trial court erred in failing to grant summary judgment for plaintiff.**

**IV. Whether the trial court erred in failing to grant plaintiff jury instruction for negligence applying the provisions of the Mississippi Residential Landlord and Tenant Act, Miss. Code Ann. § 89-8-1 et seq. (1972, as amended), and the Standard Housing Code, adopted by the City of Gulfport in City Ordinance No. 1974.**

**V. Whether the trial court erred in failing to grant plaintiff jury instruction for negligence *per se* applying the provisions of the Mississippi Residential Landlord and Tenant Act, Miss. Code Ann. § 89-8-1 et seq. (1972, as amended), and the Standard Housing Code, adopted by the City of Gulfport in City Ordinance No. 1974.**

**VI. Whether the trial court erred in failing to grant plaintiff's motion to amend judgment, and motion for judgement notwithstanding the verdict or, motion for new trial.**

¶4. These points of error are combined as they are all related to the central issue of whether the trial judge was in error in refusing to apply the RLTA, grant summary judgment, instruct the jury, or direct a verdict in favor of Sweatt based on the provisions of the Mississippi Residential Landlord and Tenant Act and, by incorporation, the Gulfport Housing Code.

¶5. Miss. Code Ann. § 89-8-23 (1) (1991) provides that:

(1) A landlord shall at all times during the tenancy:

(a) Comply with the requirements of applicable building and housing codes materially affecting health and safety;

(b) Maintain the dwelling unit, ... in substantially the same condition as at the inception of the lease.

Sweatt notes that this provision of the RLTA incorporates by reference the Standard Housing Code, re-enacted by the City of Gulfport in 1994. In particular, Sweatt cites § 305.5 of the Housing Code, which provides:

> 305.5 Stairs, Porches, and Appurtenances.
>
> Every inside and outside stair, porch, and any appurtenance thereto shall be safe to use and capable of supporting the load that normal use may cause to be placed thereon and shall be kept in sound condition and good repair.

Sweatt argues that:

> The Murphys, owners/landlords of an existing, residential dwelling in the City of Gulfport, rented to Sweatt, were at all times relevant to the Sweatt's accident under a legal duty to comply with Housing Code 305.5 and any other Housing Code provisions "materially affecting health and safety." ... Under Mississippi law, the violation of a city ordinance may become grounds for granting a negligence *per se* instruction. *citing **Hill v. London, Stetelman, and Kirkwood, Inc.***, 906 F.2d 204 (5th Cir. 1990).

¶6. In the view of this Court, Sweatt's argument that the Murphys should be held negligent *per se* for all violations of the Housing Code "materially affecting health and safety" is without merit. This Court has never interpreted the RLTA as constituting a basis for holding a landlord negligent *per se* for all housing code violations, and such an interpretation of the RLTA would lead to inequitable and extreme results.

¶7. The only decision cited by Sweatt concerning the landlord's duty to comply with applicable housing codes is Justice Sullivan's concurring opinion in ***O'Cain v. Harvey Freeman and Sons***, 603 So.2d 824 (Miss. 1991) (Roy Noble Lee, Prather, Robertson, and Banks also concurred, thus giving this opinion precedential value). While these concurring justices did place importance upon the RLTA's incorporation of the applicable housing codes, it is clear that the opinion does not advocate the sort of strict liability in tort for housing code violations which Sweatt advocates in the present case. To the contrary, Justice Sullivan's ***O'Cain*** concurrence states in part that:

> Recognizing that building and housing codes which affect health and safety generally are often governed locally, I advocate that the bare minimum standard for an implied warranty of habitability should require a landlord to provide reasonably safe premises at the inception of a lease, and to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant, unless expressly waived by the tenant.

***O'Cain,*** 603 So. 2d at 833. It is thus apparent that the concurrence in ***O'Cain*** advocated a general implied warranty of habitability for residential leases, and not the sort of strict liability for all housing code defects advocated by Sweatt herein. These concurring justices did interpret the incorporation of housing code standards into the RLTA as an indication that the Legislature intended to abolish the doctrine of *caveat emptor* with regard to residential leases in favor of an implied warranty of habitability. This Court has never held, however, that a lessor is strictly liable in tort for each and every violation of housing code provisions, as Sweatt would seem to advocate.

¶8. One commentator, in discussing the concurring opinion in ***O'Cain***, interpreted the opinion as a positive step away from a scheme under which standards of habitability are determined pursuant to housing codes, which may differ from one municipality to another. University of Mississippi Law Professor Deborah Bell

writes that:

> General obligations to repair, or warranties of habitability, are imposed as a matter of public policy; courts, or legislatures, have determined that residential tenants should be afforded a minimum standard of habitability in their homes. The policy applies equally to all tenants, and should not be tied to the chance decision of a municipality to enact a housing code. The better approach to general maintenance obligations in a state checkerboarded with codes is a general standard of minimum habitability with reference to available codes as a guideline.

> The problem of inconsistent coverage may have been remedied by a recent Mississippi Supreme Court decision. In *O'Cain v. Freeman & Sons, Inc.*, a majority of the court appears to have endorsed a general warranty of habitability as a supplement to the statutory obligation to comply with [housing] codes.

Deborah H. Bell, *The Mississippi Landlord-Tenant Act of 1991*, 61 Miss. L.J. 527, 540 (1991).

¶9. The implied warranty of habitability is based upon sound considerations of public policy, but this Court is cognizant of the fact that different, and sometimes competing, public policies may exist in different contexts. In this context, it is important that the standards of law be patterned on flexible concepts of law rather than inflexible, and sometimes arbitrary, regulations such as housing codes.

¶10. Sweatt's reliance upon a negligence *per se* theory is understandable, given that the facts of the present case do not support a finding that his injuries were the result of any failure to exercise due care on the part of the Murphys. Robert Evans, a metallurgist, testified on behalf of Sweatt that the porch swing fell when a metal hook which connected the swing to the ceiling broke under Sweatt's weight. Evans admitted under cross-examination, however, that a crack which was present on the hook was not detectable by casual inspection:

> Q: From what I understood from your deposition and your testimony here today, the crack that developed was hidden from view. No question about that?

> A: Its sheer minor size, yes. I mean, it would have been difficult to see without ...

> Q: A microscope ?

> A: Or a magnifying glass.

> Q: Well, but also not only as to its size, but to where it was located. It was into the ceiling, correct ?

> A: It could have - - It appears that it could have been above the plywood level right where it would have intersected the 2 x 4 or 2 x 6 whatever the joist is. It could have been above there. I can't tell after the fact.

> Q: Well, in fact, the drawings that you made that were attached to your deposition as an exhibit indicated that based on the information that you had in the case, you've got the crack drawn above the ceiling line, did you not.

> A: That was what I drew for the technician that was helping me with the SEM (scanning electron microscope) work, yes.

....

Q: So even if the Murphys or anyone else had walked up to that hook before the fall happened on April 30 of `95 and looked at it, they would not have been able to see the crack for two reasons; it was up in the ceiling, and it took a microscope magnification to see it, correct ?

A: That's correct.

The Murphys can not reasonably be expected to have noticed the microscopic crack in the hook which caused the accident, and it is clear that Sweatt's injuries were not the result of any failure to exercise due care on the part of the Murphys. Under the *O'Cain* standard, it is clear that the Murphys did not fail "to exercise reasonable care to repair dangerous conditions upon notice of their existence by the tenant." Sweatt himself acknowledges that he did not notice the microscopic crack in the hook supporting the swing, and he obviously did not provide any notice of these defects to the Murphys.

¶11. The only theory of recovery which would permit a recovery on the part of Sweatt under the facts herein is a strict liability theory which we have never applied to leasehold properties and which we expressly reject today. In a proper case, a jury may properly be instructed as to the applicable provisions of the local housing code in order to assist in the determination of whether the premises were delivered in a reasonably safe condition. In the present case, however, this Court concludes that the trial court did not err in refusing to instruct the jury or direct a verdict based on the provisions of the housing code. Regardless of the applicable housing code provisions, it is clear that the defect in the hook supporting the swing could not have been noticed through the exercise of reasonable care and that Sweatt's action against Murphy was not supported by the facts of this case.

¶12. A very important point in the present context is that Sweatt's lawsuit was primarily a tort action for personal injuries resulting from the failure of the hook supporting the swing. An action to recover for personal injuries resulting from housing defects which may constitute a breach of the implied warranty of habitability is clearly different from an action to recover, for example, the expenses of repairing the property. The *O'Cain* concurrence noted that an action for personal injuries resulting from the allegedly unsafe condition of leasehold property is, in essence, a negligence action governed by the familiar elements of that cause of action:

> This is not to say that a landlord is an insurer of safety. A landlord is not. Making a landlord subject to tort liability merely requires him to act as a reasonable landlord under the circumstances of the case. The tenant would still be required to show duty, breach, causation, and damages, and the landlord would be entitled to raise the standard tort defenses, such as contributory negligence, unforeseeability or intervening cause.

*Id.* at 833. Under the facts of the present case, it is clear that Sweatt's injuries did not result from any failure to exercise due care on the part of the Murphys, and Sweatt's tort action against the Murphys was properly rejected by the jury. The jury's verdict is affirmed.

**VII. Whether the trial court erred in failing to grant plaintiff's motion to amend the compliant to add additional parties and counts for violation of Miss. Code Ann. § 76-31-3 et seq (1972, as amended).**

¶13. On January 22, 1997, Sweatt sought to add additional grounds for relief and to join Paul Murphy's mother Gloria as a defendant to the lawsuit. Specifically, Sweatt sought an amendment to add claims that the Murphys engaged in misleading and deceptive advertising practices in violation of Miss. Code. Ann. § 97-23-3 (1972). Sweatt argues that:

> Defendant's advertisement when made contained assertions, representations, and/or statements of fact which were untrue, deceptive and/or misleading, and which Defendants knew, or, alternatively, on reasonable investigation, might have ascertained, were untrue, deceptive, and/or misleading. Specifically, Sweatt alleged that the Murphys Defendants knew, or alternatively, might have ascertained, multiple dangerous defects as well as numerous state and city residential housing and electrical code violations then existing on the subject premises.

The trial court was correct in refusing to permit Sweatt to add his deceptive advertising complaint. The advertisement which Murphy placed for his house simply read:

> Inviting 3 BR home. I blk from beach. Frplc., hardwood floors, Cent. H/A, porch w/ swing, etc. Avail 4/1 $750/month + dep. 864-7903.

None of the specific defects which, Sweatt alleges, existed in the house were in any way misrepresented in this advertisement. The advertisement merely described, in general terms, the nature of the house, and no representations were made in the ad regarding the electrical outlets, allegedly defective porch swing, "malfunctioning bathroom fixtures," nor any of the other defects alleged by Murphy. Sweatt is unable to demonstrate any false or misleading representations in the advertisement, and the trial judge correctly refused to permit Sweatt to amend his complaint in this regard.

¶14. Sweatt also argues that he should have been permitted to join as a defendant Gloria Murphy, the mother of Paul, who, Sweatt argues, served as a real estate agent in the transaction. The record reveals, however, that the Sweatts did not even meet Gloria until the lease had already been agreed to, and it appears that Gloria merely served as a contact for Paul and Therese while Paul was studying in Sweden. Sweatt testified that:

> Q: Isn't it true, sir, that she (Gloria) was represented as being a local contact, if you will, that you could in fact call or contact if any problem arose with regard to the house ?
>
> A: That's correct.
>
> Q: There was no representation that she was to represent you or them in any way as far as being any kind of real estate agent toward putting this house on the market or anything like that, correct ?
>
> A: That's correct.
>
> Q: And certainly she wasn't involved in renting the house to you, was she ?
>
> A: Not directly, no.

The trial court correctly refused to permit the joinder of Gloria Murphy as the real estate agent in the present lease transaction, and this point of error is without merit.

### VIII. Whether the damages awarded for breach of contract are grossly inadequate.

¶15. Sweatt sought to recover against the Murphys for a breach of the lease contract, based on the Murphys' alleged failure to repair various items on the property. The jury, however, only returned a verdict of $700, which constitutes the amount of the security deposit tendered by Sweatt. Sweatt argues that these contractual damages are "grossly inadequate."

¶16. The Murphys, however, disputed much of Sweatt's testimony regarding the defects which existed in the house, and it was for the jury to reach a determination on these issues. Moreover, the Sweatts only paid rent on the property for four months, and it was for the jury to determine the extent of damages, if any, which Sweatt incurred during this rather short lease period. Although a jury could conceivably have awarded some damages in addition to the return of the deposit, we conclude that there is insufficient basis for determining that the jury erred in assessing damages in the present case. The judgment of the trial court is affirmed.

¶17. **JUDGMENT IS AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶18. City building codes are enacted for the purpose of maintaining a specified level of quality in the construction and maintenance of buildings located within a municipality in the interest of promoting public health and safety. The provisions of the Mississippi Residential Landlord and Tenant Act, Miss. Code Ann. §§ 89-8-1 *et. seq.* (Rev. 1991 & Supp. 1998), incorporates by reference the Gulfport Housing Code and should be applicable in the case *sub judice*. To find otherwise undermines the intents and purposes of the local ordinances as well as the state law. Accordingly, I dissent.

¶19. Given the applicability of the city code and the requirement that property owners/landlords comply with it as well as the Landlord and Tenant Act, there exists a question of whether there was a failure to inspect the swing, an appurtenance to the porch. At the very least, a failure to inspect would dictate the issuance of a jury instruction on negligence *per se. See **Hill v. London, Stetelman & Kirkwood, Inc.,*** 906 F. 2d 204, 209 (5th Cir. 1990)(under Mississippi law, plaintiffs were entitled to a negligence *per se* instruction if defendant's failure to install a smoke detector was a violation of the city code, if they were members of the class the ordinance sought to protect and if the harm they suffered was the type the ordinance was intended to prevent). *See also **Wright v. United States***, 866 F. Supp. 804, 806 (S.D.N.Y.1994)(considering discretionary function exception to Federal Tort Claims Act, failure to take steps to minimize risks of personal injury where feasible "is negligent and not within the discretionary function exemption....")

¶20. Where a tenant is injured as the result of some defect in the leased premises, we simply cannot disregard the provisions of either the Landlord and Tenant Act or any applicable city ordinances. Rather, if

the landlord or building owner acted in violation of any applicable ordinance, the plaintiff if within the class the ordinance sought to protect, and the harm suffered was that which the ordinance was intended to prevent, a negligence *per se* instruction should be given.

¶21. For these reasons, I respectfully dissent.