# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00615-SCT

*CANDICE RAE SHURDEN BALLARD*

*v.*

*JOE MARSHALL BALLARD AND TERESA ANN BALLARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/01/2016 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| TRIAL COURT ATTORNEYS: | H. R. GARNER |
| | SARAH JEAN LIDDY |
| | GINGER M. MILLER |
| | JERRY WESLEY HISAW |
| | NANCY M. MADDOX |
| | A. E. (RUSTY) HARLOW, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JERRY WESLEY HISAW |
| | H. R. GARNER |
| ATTORNEYS FOR APPELLEES: | A. E. (RUSTY) HARLOW, JR. |
| | KATHI CRESTMAN WILSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 05/25/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., COLEMAN AND BEAM, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. Appellant Candice Ballard and Appellee Joe Marshall Ballard were married in 2006. The parties' marriage was turbulent at best, and they ultimately agreed to an irreconcilable differences divorce with the chancery court to decide issues, among others, of child custody

and visitation, equitable division of property, and attorneys' fees. The chancery court entered a final order in the matter in 2016.

¶2.    The bulk of Candice's appeal revolves around the chancery court's order denying her custody of the parties' three minor children based upon the chancery court's determination that both Candice and Marshall were "unfit" and that neither should be awarded custody pursuant to Mississippi Code Section 93-5-24-(9)(a)(ii) (the "family-violence presumption"). The chancery court awarded custody to the Mississippi Department of Human Services but placed the children with Marshall's parents. Candice challenges the custody decision, arguing the chancellor relied strictly on hearsay to establish her "unfitness" and history of family violence. Candice also claims error in the division of the marital estate because the chancellor failed to apply the ***Ferguson***[1] factors. Further, Candice argues she should have received attorney's fees because her parents paid her fees, and she must pay them back. Finally, Candice alleges the chancery court failed to decree possession of the lot upon which the marital home had been situated before its destruction by fire. As to the issues of custody and division of the marital estate, we reverse and remand; with respect to attorney's fees, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3.    On June 10, 2006, Candice and Marshall married in Ashland, Mississippi. Three children were born during the marriage: (1) Jane (born in 2007); (2) John (born in 2009); and

---

[1] ***Ferguson v. Ferguson***, 639 So. 2d 921 (Miss. 1994).

(3) Jill (born in 2011).[2] Neither party disputes the fact that Marshall is not the biological father of Jill, who was born as a result of a marital-separation affair.[3]

¶4. On January 5, 2015, Marshall filed a Complaint for Divorce, and Candice filed an answer and countercomplaint on January 27, 2015. The chancery court appointed a guardian ad litem, directing the guardian ad litem to investigate allegations of neglect surrounding the children and prepare a report concerning her investigation. The order also provided that,

> the GAL will be designated as an expert witness under Rule 706 of the Mississippi Rules of Evidence . . . [t]herefore, the opinions and recommendations offered by the GAL, and the factual basis derived in the course of the investigation, shall be governed by Rule 702, Rule 703, Rule 803(6), (8), (24) & (25); and Rule 804 of the Mississippi Rules of Evidence, and any other applicable rules governing the presentation of expert opinions.

Based on the court's order, the guardian ad litem compiled three reports detailing her interviews with twenty-one people.

¶5. Relevant to our discussion, the guardian ad litem's interviews uncovered multiple anecdotes that detailed domestic violence within the home. Specifically, the guardian ad litem noted she felt "that the fighting was a result of the actions and attitudes of both parties, although it does appear that Marshall was often the party that escalated to physical violence." The guardian ad litem specified there was no evidence that either parent ever physically abused the children. Even though some of the interviews detailed fighting between the couple, as to the family-violence presumption, the guardian ad litem stated she "does not feel

---

[2]The names of all children discussed herein have been changed to protect their identities.

[3] Lawrence Blain Holden, the purported biological father of Jill, was added as a third-party defendant to case, but he never appeared or filed a response.

that the presumption would apply to the facts of this case." Moreover, the guardian ad litem recommended the parties share joint legal custody of the children.

¶6. The case went before the chancery court on February 16, 2016. The guardian ad litem testified at trial extensively as to the findings in her three reports, which consisted entirely of interviews. Candice lodged numerous objections, arguing the guardian ad litem's testimony on what she was told in interviews constituted hearsay. The chancery court overruled the objections and allowed the guardian ad litem to present evidence from her reports, including interviews with the children outlining domestic abuse witnessed and the often poor conditions of the home and lack of food on many occasions. The guardian ad litem additionally testified about her interviews with school officials regarding their interactions with Marshall and Candice, with the school officials favoring Marshall as the more concerned and involved parent – a finding that Candice vehemently denied in her testimony.

¶7. The parties put on evidence regarding the division of marital property. Finally, Candice testified about her request for attorney's fees. The following exchange took place between Marshall's counsel and Candice:

> Q. Mr. Garner is a very good attorney, and he's been paid by your parents, right, your mother?
>
> A. Uh-huh. Yes.
>
> Q. Okay. And --
>
> A. Alone.

4

Q. What are you supposed to do about that? Are you going to be paying your mother back?

A. I sure am.

Q. How are you going to do that?

A. I work.

Q. I know you work.

A. And I'll make payments if I have to.

¶8. After receiving both parties' proposed findings of fact and conclusions of law, the chancery court issued its opinion on March 4, 2016, and entered its order on March 14, 2016. The opinion first determined that the parental rights of Lawrence Blain Holden should not be terminated with regard to Jill. However, the chancery court did find that Marshall stood in loco parentis as it relates to Jill and "consider[ed] him as a proper party for the placement of legal and physical custody of [Jill.]" Next, the chancery court acknowledged that Marshall could not be considered for custody of Jill if there was a natural parent available. Relying on the guardian ad litem's report and testimony and Candice's "evasive" answers at trial, the chancery court concluded that Candice's "natural parent presumption [was] rebutted by clear and convincing evidence of her unfitness."

¶9. The chancery court went on to address custody of the children. The chancery court noted: "Due to the facts and circumstances surrounding this particular case, before the Court analyzes the **Albright**[4] factors, the Court considers first the fitness of the parents to have custody of these children as well as the presumption against granting custody to a parent with

_____

[4] **Albright v. Albright**, 437 So. 2d 1003 (Miss. 1983).

a history of family violence." The chancery court acknowledged, but declined to follow, the guardian ad litem's recommendation that Candice and Marshall have joint legal custody, with Marshall having primary physical custody and Candice having visitation. In addition to reiterating that Candice was unfit, the chancery court determined that Marshall also was unfit based on his drug and alcohol abuse, domestic violence issues, and his other legal issues. Next, the chancery court applied the family-violence presumption codified in Mississippi Code Section 93-5-24(9)(a)(i)[5] and found that both parties had committed domestic violence, "[t]herefore, it is not in the best interest of the children to give either perpetrator of domestic violence custody over the other."

¶10. Without ever actually reaching an *Albright* analysis in its opinion or order, the chancellor vested custody of the three minor children with the Mississippi Department of Human Services (DHS), and placed the children in the care of the Marshall's parents until they became unable or unwilling to care for the children, or whatever placement DHS determines is in the best interest of the children. The chancery court additionally addressed

---

[5] The statute reads:

> In every proceeding where the custody of a child is in dispute, there shall be a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody or joint physical custody of a parent who has a history of perpetrating family violence. The court may find a history of perpetrating family violence if the court finds, by a preponderance of the evidence, one (1) incident of family violence that has resulted in serious bodily injury to, or a pattern of family violence against, the party making the allegation or a family household member of either party. The court shall make written findings to document how and why the presumption was or was not triggered.

Miss. Code Ann. § 93-5-24(9)(a)(i) (Rev. 2013).

child support, alimony, and guardian ad litem fees, none of which are at issue in the present appeal.

¶11. As to the equitable division of the marital property, the chancellor found "that both parties have contributed equally to the acquisition of the [marital] property. Accordingly, the Court finds that each is entitled to one-half of the value of all of the [marital] property." The chancery court further explained that the parties might receive additional insurance proceeds from the marital house that was destroyed in a fire. By prior order, the chancery court had placed an equitable lien on any such proceeds, and, in the order of divorce, the chancery court ordered the funds to be used to pay the guardian ad litem and attorney's fees and expenses first, then $3,000 to Marshall, and if any remains, that amount to be split equally between the parties.

¶12. Lastly, the chancery court addressed the award of attorney's fees. Since the court found both parties were employed and were likely to receive more proceeds from insurance payouts and neither party had presented proof that he/she had an inability to pay; it declined to award attorney's fees.

¶13. On March 11, 2016, Candice filed a Motion for Reconsideration and/or Motion for New Trial, which the chancery court denied. Based on the above, Candice raises the following issues on appeal:

    I.    Whether the chancery court erred in denying Candice custody of her minor children by relying on guardian ad litem hearsay testimony in order to find Candice unfit and apply the presumption against custody to a parent with a history of family violence under § 93-5-24(9)(a)(i).

II.	Whether the chancery court erred in dividing the marital estate due to the chancellor's failure to make factor findings under **Ferguson** on the record.

III.	Whether the chancery court erred in failing to award attorney's fees to Candice because her parents paid her fees, and she must repay them.

IV.	Whether the chancellor erred in failing to decree possession of the lot upon which the marital home formerly had been situated before it burned.

## STANDARD OF REVIEW

¶14.	Per well-established customs involving domestic disputes, a chancellor's conclusions of law receive *de novo* review. **Chesney v. Chesney**, 910 So. 2d 1057, 1060 (¶ 5) (Miss. 2005) (citing **Southerland v. Southerland**, 875 So. 2d 204, 206 (¶ 5) (Miss. 2004)). However, "[a] chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous." **Sanderson v. Sanderson**, 824 So. 2d 623, 625 (¶ 8) (Miss. 2002) (quoting **Consol. Pipe & Supply Co. v. Colter**, 735 So. 2d 958, 961 (¶ 13) (Miss. 1999)). In other words, "we cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." **Gately v. Gately**, 158 So. 3d 296, 301 (¶ 26) (Miss. 2015) (citing **White v. White**, 26 So. 2d 342, 352 (¶ 31) (Miss. 2010)). "However, the Court will not hesitate to reverse if it finds the chancellor's decision is manifestly wrong, or that the court applied an erroneous legal standard." **Owen v. Owen**, 928 So. 2d 156, 160 (¶ 11) (Miss. 2006).

## ANALYSIS

I.	**Guardian Ad Litem Hearsay and Custody**

¶15. Candice takes issue with the chancellor's disposition of custody due to the chancellor's reliance upon hearsay. Specifically, Candice argues the chancery court relied upon the guardian ad litem's reports–which consisted mostly of hearsay–and the guardian ad litem's testimony–which was based in hearsay–as substantive evidence to establish her unfitness and trigger the family-violence presumption. To the extent that the chancellor relied on the hearsay contained in the guardian ad litem's report, we agree.

¶16. First, the Court notes the chancery court's failure to provide an *Albright* analysis. Parents enjoy–against third parties–a natural-parent presumption favoring an award of custody. *In re Waites*, 152 So. 3d 306, 311 (¶ 14) (Miss. 2014). Only a clear showing of abandonment, desertion, immoral conduct detrimental to the child, and/or *unfitness* can rebut the presumption. *Id.* at 311-12 (¶ 15). However, the inquiry does not end once the presumption is rebutted. *In re Dissolution of Marriage of Leverock & Hamby*, 23 So. 3d 424, 431 (¶ 24) (Miss. 2009). "If the court finds one of [the] factors [that rebuts the natural-parent presumption] has been proven, then the presumption vanishes, and the court *must go further to determine custody based on the best interests of the child through an on-the-record analysis of the Albright factors*. *Id.* (emphasis added). In other words, a finding that the natural-parent presumption has been rebutted does not end the inquiry into custody without an *Albright* analysis. If, on remand, the chancery court finds that the natural-parent presumption has been rebutted, then the chancery court must go on to consider the *Albright* factors to determine custody in the best interest of the children. We note that, even if, upon remand, the chancellor finds enough competent evidence to engage the family-violence

9

presumption, the presumption is a rebuttable one. Miss. Code Ann. § 93-5-24(9)(a)(I) (Rev. 2013).

¶17. In any event, the chancery court erred in finding Candice to be unfit and applying the family-violence presumption. Candice argues the only "proof" presented at trial to establish her unfitness was inadmissible hearsay from the guardian ad litem. Similarly, Candice argues the chancery court relied on inadmissible hearsay to apply the family-violence presumption against her.

¶18. Candice is correct that the chancery court relied heavily on hearsay testimony in determining that she was unfit and that the family-violence presumption should be triggered. The chancery court's analysis determining Candice's unfitness focused primarily on the guardian ad litem's report and testimony and on Candice's evasive answers to questions at trial that indicated a "wariness to convey the truth." The chancery court concluded: "Based on the evidence as stated above, i[.]e., [Candice] failing to take responsibility for her actions or lack thereof, and continuing to blame others for her mistakes, the [chancery c]ourt finds by clear and convincing evidence that her natural parent presumption has been rebutted due to her unfitness."[6] Additionally, in our review of the record, we could discern only one piece of nonhearsay testimony that indicated Candice had committed any act of family violence: when Marshall testified that Candice had beaten him with a lamp. Other evidence suggesting Candice had inflicted violence on Marshall came almost entirely from the guardian ad litem's

---

[6] "In short, to overcome the natural parent presumption, there must be clear and convincing evidence of conduct or unfitness 'presenting a genuine serious danger to the child.'" *Neely v. Welch*, 194 So. 3d 149, 158 (¶ 25) (Miss. Ct. App. 2015) (citing Deborah H. Bell, *Mississippi Family Law* § 5.06 [2][a], at 121 (2005)).

10

reports and the guardian ad litem's testimony at trial, all of which consisted of the guardian ad litem's third-party interviews. None of the persons interviewed by the guardian ad litem testified at trial except the parties and one of Candice's daughters from a previous relationship. Despite a recommendation from the guardian ad litem in her supplemental report that the chancery court should not apply the family-violence presumption, the chancellor relied on the hearsay contained within her report to disagree with her recommendation and apply it.

¶19. In *McDonald v. McDonald*, 39 So. 3d 868, 882 (¶ 47) (Miss. 2010), the Court addressed "whether the guardian ad litem acted beyond her authority by offering hearsay testimony without being qualified as an expert." The appellant in *McDonald* argued the chancery court erred in allowing a guardian ad litem to testify as to statements relayed to the guardian ad litem by teachers at a school. *Id.* at 884 (¶ 53). The *McDonald* Court set forth the "proper role" of a guardian ad litem as follows:

> [A] guardian ad litem appointed to investigate and report to the court is obligated to investigate the allegations before the court, process the information found, report all material information to the court, and (if requested) make a recommendation. However, the guardian ad litem should make recommendations only after providing the court with all material information which weighs on the issue to be decided by the court, including information which does not support the recommendation. The court must be provided all material information the guardian ad litem reviewed in order to make the recommendation. Recommendations of a guardian ad litem must never substitute for the duty of a chancellor.

*Id.* at 883 (¶ 48) (citing *S.G. v. D.C.*, 13 So. 3d 269, 282 (Miss. 2009)). During trial of the case, the chancellor had overruled the objection to hearsay, claiming courts in Mississippi have a "historical practice" of allowing guardians ad litem to offer hearsay testimony. *Id.*

11

The majority opinion in *McDonald* disagreed with the chancellor's view, holding, "We find that it was error for the chancellor to find that the rules of evidence did not apply in this adversarial proceeding." *Id.* Considering the above-quoted language defining the importance and role of the guardian ad litem along with the admonition issued by the *McDonald* Court regarding reliance on hearsay, we conclude the following: The guardian ad litem plays an important role, and – as set forth above – chancellors must consider all of the information available to the guardian ad litem when considering whether to follow the recommendation made. However, especially when a chancellor departs from the recommendation of the guardian ad litem, as happened here, the result reached by the chancellor must be supported by admissible, competent evidence rather than hearsay.

¶20. Presiding Justice Dickinson issued a specially concurring opinion in *McDonald* tailored to the issue of guardian ad litem testimony and hearsay. *Id.* at 887 (¶ 65) (Dickinson, P.J., specially concurring). His concurrence was joined by four other justices, giving the opinion precedential value. *See Sweatt v. Murphy*, 733 So. 2d 207, 209-210 (¶ 7) (Miss. 1999) (noting that when at least four justices vote in favor of another justice's concurring opinion, the concurrence has "precedential value"). Addressing guardian ad litem hearsay, Presiding Justice Dickinson wrote, "Rule 1 of the Mississippi Rules of Evidence plainly says those rules apply in chancery court—and they include no exception for guardians ad litem." *Id.* The concurrence continued: "Certainly I agree that guardians ad litem–properly appointed under Rule 706 and qualified as experts under Rule 703–may rely on hearsay in reaching their opinions. But hearsay used to support an expert's opinion is quite different

12

from hearsay admitted as substantive evidence." *Id.* (¶ 68). In other words, "pure, rank, un-cross-examined hearsay" by a guardian ad litem cannot be used as substantive evidence. *Id.* (¶ 68).

¶21. A dearth of Mississippi jurisprudence squarely addresses the issue of guardian ad litem hearsay being used as substantive evidence. However, as Presiding Justice Dickinson proclaimed in *McDonald*, our rules of evidence apply in chancery court; and the rules prohibit, subject to listed exceptions, the use of hearsay as substantive evidence. In view of the rule, the chancery court erred in relying on inadmissible hearsay to find Candice unfit and to invoke the family-violence presumption against Candice. Therefore, we reverse the chancery court's disposition on custody of the three minor children and remand for further proceedings.

## II. Division of the Marital Estate and *Ferguson* Factors

¶22. Candice argues the chancery court erred in its division of the marital estate because it failed to make factor findings pursuant to *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). We agree with Candice. *Ferguson* provides eight factors a chancery court must consider "when attempting to effect an equitable division of marital property." *Id.* "*Ferguson* requires consideration of the [eight] factors, or a finding of inapplicability." *Lowrey v. Lowrey*, 25 So. 3d 274, 286 (¶ 28) (Miss. 2009). The Court has held in no uncertain terms, "The failure to consider all applicable *Ferguson* factors is error and mandates reversal." *Id.* at 286 (¶ 29). Moreover, "[f]actor tests, such as provided in *Ferguson* for property division . . . , *must* be considered on the record in every case." *Id.* at

13

280 (¶ 7) (emphasis added). However, the chancery court need only to consider the factors it finds are "applicable." **Sproles v. Sproles**, 782 So. 2d 742, 748 (¶ 23) (Miss. 2001) (citation omitted) ("[T]he chancellor is not required to address each and every factor; indeed, the chancellor may consider only the factors he finds applicable to the marital property at issue.").

¶23. In its opinion, the chancery court divided the marital estate using the following language: "Examining the factors for equitable distribution as set forth in **Ferguson**, and further considering **Hemsley v. Hemsley,** 639 So. 2d 921 (Miss. 1994), the Court finds that both parties have contributed equally to the acquisition of the aforesaid property."[7] Candice asserts the chancery court's opinion is just a "blanket statement," which fails to satisfy the **Lowrey** requirement of an "on the record" analysis of the **Ferguson** factors. Marshall claims the chancery court was not presented evidence with regard to the other **Ferguson** factors, and therefore, the chancery court must have found them irrelevant for discussion. At issue, though, is that the chancery court did not say what factors were "irrelevant" or "inapplicable." **Lowrey** requires a chancery court to analyze all eight **Ferguson** factors or provide a "*finding of inapplicability*." **Lowrey**, 25 So. 3d at 286 (¶ 28) (emphasis added). The chancery court's order does not satisfy **Lowrey**'s directive to make on-the-record findings, and, therefore, we remand for a more thorough analysis of the **Ferguson** factors.

### III. Failure to Award Attorney's Fees

---

[7] The parties' direct or indirect economic contribution to the acquisition of the marital property is one of the **Ferguson** factors. **Ferguson**, 639 So. 2d at 928.

14

¶24. Candice argues the chancery court erred in failing to award her attorney's fees. In its opinion, the chancery court correctly articulated, "In the present case, the most plausible reason or argument for an award of attorney fees would undoubtedly be the inability to pay." The chancery court found Candice's "inability to pay has not been shown . . . ." Marshall argues the chancery court's ruling should be affirmed, and we hold in favor of Marshall.

¶25. Candice's parents paid her attorney's fees, but she testified that she will repay them. When asked how, she said, "I work." Now Candice argues she should receive an attorney's fee award because unrebutted testimony that a party has to repay her parents for attorney's fees is a proper basis for an award of the same. Candice cites *Layton v. Layton* 181 So. 3d 275 (Miss. Ct. App. 2015), to support her proposition. Candice's reliance on *Layton* is misplaced. First, the chancery court in *Layton* had approved an award of attorney's fees, not disallowed one as with Candice. *Id.* at 288 (¶ 44). Second, while the appellee in *Layton* similarly had to repay her parents, the appellee admitted she would be unable to repay them. *Id.* at 288-289 (¶ 45). In contrast, Candice testified she could pay back her parents.

¶26. Next, Candice relies on *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993), arguing the Court will require an attorney's fee award when unrebutted testimony establishes a party must repay her parents. We disagree with Candice's characterization of *Armstrong*. The appellant in *Armstrong* was denied attorney's fees at trial, and the Court did reverse the chancery court's decision because "[s]he had no separate funds or estate available to pay her attorney and was forced to borrow funds from her parents for this purpose." However, the Court's decision in *Armstrong* is more narrow than the broad application Candice suggests.

15

Specifically, the Court held, "*Under these circumstances*, failure to award [the Appellant] the reasonable attorney's fees incurred was an abuse of discretion." ***Id.*** at 1282 (emphasis added). The language, "under these circumstances," indicates the Court's intent to limit a broad application of its holding. Moreover, the Court reemphasized the high standard of review as to an award of attorney's fees: "We have said time and time again that an award of attorney's fees in divorce cases is largely a matter entrusted to the sound discretion of the trial court." ***Id.***

¶27. Based on the above, we are left unconvinced the Court's precedent establishes a broad, *per se* rule that, if a party to a divorce provides unrebutted testimony her parents paid for her attorney's fees, then the Court should find abuse of discretion every time a chancery court fails to award the fees. Rather, the issue is more factually sensitive in nature. For example, Candice said at trial that she will pay her parents back. Candice also potentially could expect, as the chancery court noted in his opinion, more proceeds from the insurance company, which the chancery court ordered to be used to pay for attorney's fees. Because of the facts discussed above, the chancery court did not abuse his discretion in failing to award Candice attorney's fees. Therefore, we affirm the chancery court's decision on attorney's fees.

**IV.     The Lot upon which the Marital Home Formerly had been Situated**

¶28. Candice argues the chancery court failed to address, classify, divide, or make any findings with regard to what was to be done with the lot upon which the marital home, which had burned down, formerly had been situated. In its opinion, the chancery court found the

marital property included "the marital home located at 2117 Hwy. 301 So., Hernando, MS 38632 which was destroyed by fire in November of 2015." As a result of the fire destroying the home, the parties did receive (and could potentially receive more) insurance proceeds. The chancery court provided for the distribution of the proceeds within its opinion. However, Candice is correct. Neither the opinion nor the order addressed the disposition of the lot. The chancery court must account for the lot in its division of the marital estate; as a result, we remand for further proceedings.

## V.    Discovery of Possible Misconduct by Appellee

¶29.    While reviewing the record, we discovered Marshall had included documents sealed by court order within his record excerpts. Specifically, Docket # 17, the "Initial Report of the Guardian Ad Litem By Ginger M. Miller," was placed under seal by the chancery court. According to the court order, the document was sealed "due to the highly sensitive subject matter and confidential information contained in the initial report . . . ." We discovered nothing in the record that indicated the report had been "unsealed." In fact, upon receipt of the record, the report was separately wrapped in a envelope with "Vault" and "Sealed" written across the front, along with the order sealing the report affixed to the back. However, Marshall included the report in his record excerpts, which were made publicly available. Because Marshall potentially violated the chancery court's order in publishing sealed documents, we raise the issue for the chancery court to consider, in his discretion, what, if any, action is necessary on remand.

## CONCLUSION

17

¶30.    We hold a chancery court cannot rely on guardian ad litem hearsay that is not within one of the enumerated exceptions as substantive evidence.  The chancery court also failed to perform an on-the-record analysis of the *Ferguson* factors in its distribution of the marital estate, which is required by *Lowrey*.  However, the chancery court did not err in failing to award Candice attorney's fees because she said she could pay back her parents.  As to the fourth issue, the chancery court must address the parties' lot and properly provide for its distribution.  Finally, the chancery court on remand should consider Marshall's potential violation of the order sealing the guardian ad litem report.  Based on the foregoing, we affirm in part, reverse in part and remand for proceedings consistent with our opinion.

¶31.    **AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

        **WALLER, C.J., DICKINSON, P.J., KITCHENS, KING, MAXWELL AND BEAM, JJ., CONCUR.  RANDOLPH, P.J., AND CHAMBERLIN, J., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**