# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-01061-SCT

## CONSOLIDATED WITH

## NO. 2016-CA-00615-SCT

*CANDICE RAE SHURDEN BALLARD*

*v.*

*JOE MARSHALL BALLARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/2018 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| TRIAL COURT ATTORNEYS: | A. E. (RUSTY) HARLOW, JR. |
| | H. R. GARNER |
| | NANCY M. MADDOX |
| | SARAH JEAN LIDDY |
| | KURT STEVEN SAUL, JR. |
| | SABRINA D. HOWELL |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JERRY WESLEY HISAW |
| ATTORNEY FOR APPELLEE: | SABRINA D. HOWELL |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 08/29/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.    This Court remanded this case for further proceedings on  child custody.  ***Ballard v.***

***Ballard***, 255 So. 3d 126 (Miss. 2017).  Finding that the chancellor was not manifestly wrong

or clearly erroneous in granting custody of the three minor children to Marshall Ballard, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The facts were summarized in *Ballard*. Candice and Marshall Ballard were married in 2006, and three children were born during the marriage: (1) Jane, who was born in 2007; (2) John, who was born in 2009; and (3) Jill, who was born in 2011.[1] *Id.* at 128-29. "Neither party disputes the fact that Marshall is not the biological father of Jill, who was born as a result of a marital-separation affair." *Id.* at 129.[2]

¶3. Marshall filed for divorce, and the parties later agreed to an irreconcilable-differences divorce in which the chancery court would decide child custody, among other issues. *Id.* The chancellor awarded custody to the Department of Human Services but placed the children with Marshall's parents. *Id.* at 130.

¶4. Candice appealed, arguing that the chancellor relied strictly on hearsay in making the custody determination. *Id.* at 131. This Court in *Ballard* agreed with Candice and reversed and remanded the issue of child custody. *Id.* at 134.

¶5. On remand, the chancery court awarded custody of the children to Marshall. Aggrieved, Candice appeals, arguing that the instructions given by this Court were simply to review the determination of Candice's fitness without the hearsay evidence, not to conduct a new trial on custody.

---

[1] We have continued to use the aliases for the minor children fashioned by this Court in *Ballard* because of the confidential nature of this case.

[2] It is undisputed that Marshall is the biological father of Jane and John.

## LAW AND ANALYSIS

¶6.     Candice raises the following issues on appeal:

    I.      Whether the chancellor erred in following the instructions given by this Court.

    II.     Whether the chancellor erred in finding that custody of Jill could be awarded to Marshall.

    III.    Whether the chancellor erred in the *Albright* analysis.

¶7.     The standard of review in domestic-relations cases is well-established: "When this Court reviews domestic-relations matters, our scope of review is limited by the substantial evidence/manifest error rule. Therefore, we will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Darnell v. Darnell*, 167 So. 3d 195, 201 (Miss. 2014) (*Darnell I*) (internal quotation marks omitted) (quoting *Giannaris v. Giannaris*, 960 So. 2d 462, 467 (Miss. 2007)).

    **I.     Whether the chancellor erred in following the instructions given by this Court.**

¶8.     This Court reversed and remanded the issue of child custody for further proceedings, because it found that the chancellor's reliance on hearsay evidence in the guardian ad litem's report had been erroneous. *Ballard*, 255 So. 3d at 134. Candice contends that on remand the chancellor was only to consider whether she was unfit or whether the presumption against custody by a violent parent had been implicated by her.

¶9.     Relying on *Darnell II*, Candice asserts that the trial court cannot go beyond the instructions of the appellate court. *Darnell v. Darnell*, 234 So. 3d 421, 424 (Miss. 2017)

3

(***Darnell II***). However, the facts in ***Darnell II*** are dissimilar. In ***Darnell II***, this Court specifically directed the trial court to make new findings on remand about whether two statements were admissible evidence and to conduct a new ***Albright*** analysis in light of that evidence. ***Id.***

¶10. Here, no such instructions limited the trial court's consideration of the issue on remand. The instructions were simply to reconsider custody of the three minor children without using the hearsay evidence from the guardian ad litem's report.

¶11. "The preeminent consideration of the chancellor on remand should be the best interest of the children." ***Jerome v. Stroud***, 689 So. 2d 755, 760 (Miss. 1997) (Prather, P.J., specially concurring). On remand, the chancellor found that Marshall was best suited to have custody both of his two biological children and also of Jill, for whom he had served *in loco parentis*. Therefore, the chancellor on remand did not go beyond the instructions given by this Court.

**II.     Whether the chancellor erred in finding that custody of Jill could be awarded to Marshall.**

¶12. While Candice contends that the chancellor exceeded the scope of the instructions on remand, she argues that Marshall's having acted *in loco parentis* for Jill was not enough to overcome the natural-parent presumption with regard to Candice's custody of Jill.[3] Candice correctly states that "[t]he law recognizes that parents are the natural guardians of their children, and 'it is presumed that it is in the best interest of a child to remain with the natural parent as opposed to a third party.'" ***Davis v. Vaughn***, 126 So. 3d 33, 37 (Miss. 2013)

---

[3]Candice takes issue with the court's granting custody of all three children to Marshall, but her argument focuses on Marshall's having acted *in loco parentis* to Jill and his being granted custody of Jill despite the natural-parent presumption.

(quoting *In re Dissolution of Marriage of Leverock and Hamby v. Leverock*, 23 So. 3d 424, 429 (Miss. 2009)).

> However, the presumption in favor of the parent may be rebutted by clear and convincing evidence that "(1) the parent has abandoned the child; (2) the parent has deserted the child; (3) the parent's conduct is so immoral as to be detrimental to the child; or (4) the parent is unfit, mentally or otherwise, to have custody."

*Id.* (quoting *Smith v. Smith*, 97 So. 3d 43, 46 (Miss. 2012)). "If the natural-parent presumption is successfully rebutted, the court may then proceed to determine whether an award of custody to the challenging party will serve the child's best interests." *Id.* (citing *Smith*, 97 So. 3d at 46).

¶13.    Candice contends that this case is controlled by *In re Waites v. Ritchie*, 152 So. 3d 306 (Miss. 2014). In *Waites*, the mother sought to modify a custody agreement. *Id.* at 307. She subsequently notified T.J., her child's biological father who had joined her petition seeking custody. *Id.* Although her husband, Scott, had cared for the child from the beginning, the chancellor excluded Scott from the *Albright* consideration because he was not a natural parent; the chancellor awarded full custody to the mother. *Id.* However, the chancellor allowed Scott and T.J. visitation. *Id.* Scott appealed, and the Court of Appeals reversed and remanded, finding that Scott should have been considered on equal footing with the natural parents. *Id.* The mother and T.J. filed a petition for a writ of certiorari, which this Court granted. *Id.* This Court found that the chancellor had properly excluded Scott from consideration. *Id.*

5

¶14. Candice further argues that the chancellor erroneously relied on a Court of Appeals case, *Welton v. Westmoreland*, 180 So. 3d 738 (Miss. Ct. App. 2015), to support awarding Marshall custody of Jill. In *Welton*, the natural father sought a modification of custody of his daughter Alexice and subsequently amended his complaint to seek custody of his daughter Justice. *Id.* at 740. Although Daniel was not Justice's biological father, she believed he was until she was twelve years old. *Id.* Her biological father abandoned her and, after her birth, had never made an attempt to see her. *Id.* While Daniel knew he was not Justice's biological father, he raised her like she was his own from the time she was four months old. *Id.* Further, Justice's mother requested that Justice retain Daniel's last name. *Id.*

¶15. In determining custody of Justice, the court acknowledged that,

> [i]n general, the natural parent presumption precludes a court from granting custody to a "third party" over the objection of a natural parent absent clear and convincing evidence that the natural parent has abandoned or deserted the child, has engaged in immoral conduct harmful to the child, or is an unfit parent.

*Id.* at 744. "The chancellor did not find that any of the grounds for overcoming the natural-parent presumption had been established," but he did find that, "on the 'unique' facts of this case, Daniel 'stands in the place of a natural parent for purposes of custody of Justice.'"*Id.*

¶16. *Welton* relied upon two Supreme Court cases, *Griffith v. Pell* and *J.P.M. v. T.D.M.*, for guidance. While the facts in *Pell* and *J.P.M.* vary slightly from the facts in *Welton*, the Court of Appeals appropriately extended the reasoning in those cases to apply to *Welton*, and, we find that the same principles apply to the present case. In *Pell*, as discussed in

6

*Welton*, this Court held that "a husband who learned during divorce proceedings that he was not the biological father of a child born just prior to the marriage could be granted visitation and, custody over the objections of his wife (the child's mother)." *Id.* at 745 (citing *Griffith v. Pell*, 881 So. 2d 184, 185-87 (Miss. 2004)). Moreover, as discussed in *Welton*, in *J.P.M.*, this Court "affirmed an order granting custody to a husband who had learned during divorce proceedings that he was not the biological father of a child born to the marriage" because "[h]e was deemed the 'father in fact' and was not required to present additional evidence to rebut the natural parent presumption." *Id.* (citing *J.P.M. v. T.D.M.*, 932 So. 2d 760, 762-70 (Miss. 2006)).

¶17.  This Court reasoned in both *Pell* and *J.P.M.*

> that the natural-parent presumption had been overcome based on several facts: (1) the husbands stood in loco parentis; (2) they had supported, cared for, and treated the child as their own; (3) they could have been required to pay child support ("with the burden should go the benefit"); and (4) the biological fathers were not really in the picture: the one in *Pell* had disclaimed any interest in the child and had agreed to relinquish his parental rights, while the one in *J.P.M.* could not even be determined conclusively.

*Id.* (quoting *Waites*, 152 So. 3d at 312).

¶18.  In *Welton*, the Court of Appeals found that the facts necessary to overcome the natural-parent presumption were present but questioned whether the facts were sufficient to place Daniel in the position of a natural parent for purposes of Justice's custody because Daniel had not been defrauded like the fathers in *Pell* and *J.P.M. Id.* at 747.

¶19.  *Welton* held, "although the relevant Supreme Court decisions do not directly address the unique facts of this case, *Pell*'s reasoning and *Waites*'s emphasis on whether the

7

biological father is 'really in the picture' are instructive and should control." *Id.* "[T]he mere existence of a biological father who abandoned a child years ago should not be used 'to defeat an existing father-child relationship when [that] biological father [is not] seeking to assume care, support and nurturance of the child.'" *Id.* (alterations in original) (quoting *Pell*, 881 So. 2d at 187). The mother led Justice to believe that Daniel was her father and confirmed that Justice's biological father had abandoned her at birth. Therefore, the *Welton* court affirmed the chancellor, who had found "that *Pell* and subsequent Supreme Court decisions provided legal authority to grant physical custody of Justice to Daniel." *Id.* at 748.

¶20.    *Welton* logically extended the principles articulated in *Pell* and *J.P.M.*. The unique facts of *Welton*—allowing an *in loco parentis* figure to have custody—also are present here. There was no question that Marshall acted *in loco parentis* to Jill. Further, the trial court's *in loco parentis* finding was neither raised as an issue on appeal nor was it overturned by the appellate court in *Ballard*.

¶21.    Marshall always supported, cared for, and treated Jill as his own child, even though he knew she was not his biological child. Candice concedes that Marshall has always provided for Jill, as he did for John and Jane. She admitted even that Marshall is the only father Jill has ever known. Further, no evidence was presented that Candice sought support of Jill from the biological father. In fact, the biological father received notice of the hearing and did not attend, nor has he ever attempted to visit or to support Jill. It is clear that the biological father is absent.

8

¶22. Lastly, Candice argues that *Welton* is both distinguishable and predates this Court's ruling in *Miller v. Smith*, 229 So. 3d 100 (Miss. 2017). This Court finds, however, that the facts of *Miller* are dissimilar. There, the Court found that the circumstances did not give Miller *in loco parentis* status. *Miller*, 229 So. 3d at 105. Miller had been sentenced to prison for eighteen months when the minor child, Smitty, was only a few months old. *Id.* at 104. After prison, Miller did not remain a constant in Smitty's life. *Id.* Miller provided no financial assistance to Smitty, nor did he visit Smitty while his mother was in prison during 2012 and 2013. *Id.* Therefore, Miller did not rebut the natural-parent presumption, and the Court found substantial evidence in the record to support the chancellor's conclusion that Miller did not stand *in loco parentis*. *Id.* at 104-105.

¶23. Accordingly, this Court finds that the chancellor appropriately held that custody of Jill could be awarded to Marshall pending an *Albright* analysis.

### III. Whether the chancellor erred in the *Albright* analysis.

¶24. "In child custody cases, the polestar consideration is the best interest of the child, and this must always be kept paramount." *Lee v. Lee*, 798 So. 2d 1284, 1288 (Miss. 2001) (citing *Sellers v. Sellers*, 638 So. 2d 481, 485 (Miss.1994)).

> To help guide us to a proper determination as to custody, the court considers the following factors in determining the child's best interests: (1) age, health and sex of the child; (2) a determination of the parent that has had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment

9

and employment of each parent and other factors relevant to the parent-child relationship.

*Id.* (citing ***Albright v. Albright***, 437 So. 2d 1003, 1005 (Miss. 1983)).

¶25. "While the ***Albright*** factors are extremely helpful in navigating what is usually a labyrinth of interests and emotions, they are certainly not the equivalent of a mathematical formula. Determining custody of a child is not an exact science." ***Id.*** Candice argues that the chancellor failed to address each of the factors with specificity. We disagree and find that the chancellor's findings are supported by substantial evidence. "Where the chancellor properly considers and applies the ***Albright*** factors, the appellate court cannot say the chancellor is manifestly wrong; such careful consideration and application by the chancellor precludes reversal on appeal." ***Jerome***, 689 So. 2d at 757 (citing ***Smith v. Smith***, 614 So. 2d 394, 397 (Miss. 1993)).

¶26. Because Candice contends that the chancellor did not apply the ***Albright*** factors with specificity, we review the chancellor's analysis to see if he committed manifest error.

   *1) Age, Health, and Sex of the Child*

¶27. The three minors, two who are females and one who is male, are healthy, intelligent children between the ages of six and eleven. The chancellor found that the son can benefit from a strong male influence in his life and that the daughters can benefit from a strong female influence. Because of these facts, the chancellor agreed with the guardian ad litem, who recommended that the factor favored neither Marshall nor Candice.

   *2) Continuity of care*

10

¶28. Although the children have been in neither party's custody since shortly after the original trial, the evidence reflects that both parents had been greatly involved before in the children's day-to-day care. Thus, the continuity-of-care factor is neutral.

*3) Best parenting skills and willingness to provide primary child care*

¶29. While the guardian ad litem found that the willingness factor favored Candice, that the capacity factor favored Marhsall, and that the parenting-skills factor favored both parties, overall, the chancellor found that both factors favored Marshall, who had raised Jill as his own even though he knew the situation of her birth. While he has paid child support as directed by the Department of Human Services, Candice has not. Additionally, he has moved in order to be closer to the children.

*4) Employment of the parties and responsibilities of that employment*

¶30. The chancellor found that the employment factor favored Marshall because of his flexible work schedule and his ability to work from home. While Candice is employed, she chooses to maintain part-time employment, causing her to live in poverty.

*5) Physical and mental health and age of the parties*

¶31. Neither party has any infirmities or an age gap that would hinder their care for the children, so the chancellor found the physical-and-mental-health factor to be neutral, and we agree.

*6) Emotional ties of the parties and child*

¶32. The chancellor noted that the children are loved equally by both parents, and found the emotional-ties factor to be neutral. We agree.

*7) Moral fitness of the parties*

¶33. The court disagreed with the guardian ad litem, who had found that the moral fitness factor favored Candice. The chancellor found that, while "[n]either of the parties should be ecstatic about the light of morality shining upon them," Marshall has made remarkable progress, while Candice has continuously denied responsibility for her actions. We agree.

*8) Home, school, and community record of the child*

¶34. The chancellor found that Marshall and Candice are both active in church and have positive support systems at home. Thus, this factor is neutral.

*9) Preference of the child*

¶35. The chancellor properly found that the preference-of-the-child factor to be inapplicable because the children have not reached the age of twelve, which would allow them to testify about their preference. Miss. Code Ann. § 93-11-65(1)(a) (Rev. 2018). We agree.

*10) Stability of home environment and employment*

¶36. The chancellor found that both parties have positive home environments. Marshall changed his residence to be closer to the children, and Candice has a supportive husband at home.

*11) Other factors*

¶37. While "there is no requirement that the Court defer to the findings of the guardian ad litem," "when a chancellor's ruling is contrary to the recommendation of that *statutorily required* guardian ad litem," "the reasons for not adopting the recommendation . . . [should]

12

be stated by the Court in its opinion." *Porter v. Porter*, 23 So. 3d 438, 449 (Miss. 2009) (internal quotation marks omitted) (quoting *S.N.C. v. J.R.D.*, 755 So. 2d 1077, 1082 (Miss. 2000)). Although the chancellor mostly agreed with the guardian ad litem's report, he failed to understand why her testimony changed from the first trial to the second.

¶38. The guardian ad litem changed her recommendation despite finding 1) that Marshall's conduct had improved more dramatically than Candice's had; 2) that Marshall had obediently paid support as ordered, while Candice never voluntarily paid anything; and 3) that Candice's testimony and interview questions were questionably truthful.

¶39. While the chancellor acknowledged "that in the absence of some unusual and compelling circumstances dictating otherwise, it is not in the best interest of children to be separated," unusual circumstances do exist here that justify not keeping the siblings together.[4] *Sellers v. Sellers*, 638 So. 2d 481, 484 (Miss. 1994) (quoting *Sparkman v. Sparkman*, 441 So. 2d 1361, 1362 (Miss. 1983)). The chancellor found that placing three more children in the mother's home under the financial circumstances that exist simply to keep the siblings together would not serve the children's best interest.

¶40. Accordingly, the chancellor found that the best interest of the children would be served by placing them in the full care, custody, and control of Marshall, subject to a visitation schedule for Candice. In considering the *Albright* factors, the chancellor was within his discretion in finding that the factors favored Marshall.

## CONCLUSION

---

[4]Candice has seven children and argued that John, Jane, and Jill should be kept with their other siblings.

13

¶41. Because the chancellor did not exceed the scope of the instructions on remand or err in awarding custody of the three minor children to Marshall, we affirm. The chancellor was within his discretion in finding that Marhsall's *in loco parentis* status entitled him to be on equal footing with Candice in the custody determination about Jill. As to Marshall's two biological children, we cannot say the chancellor was manifestly wrong in his ***Albright*** analysis.

¶42. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., BEAM, CHAMBERLIN AND GRIFFIS, JJ. COLEMAN, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, P.J., NOT PARTICIPATING.**

**MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶43. I agree this case should be affirmed based on the special application of the *in loco parentis* doctrine established in ***Griffith v. Pell***, 881 So. 2d 184 (Miss. 2004), and ***J.P.M. v. T.D.M.***, 932 So. 2d 760 (Miss. 2006). I write to point out that recently, in ***In re Waites v. Ritchie***, 152 So. 3d 306, 314 (Miss. 2014), this Court muddied the water quite a bit over application of the *in loco parentis* doctrine. In ***Waites***, this Court held the Court of Appeals in error for applying ***Pell*** and ***J.P.M.*** to find a presumed father's *in loco parentis* status put him on equal footing with the biological parents. ***Id.*** at 311-14. And this Court used strong language that indicated the ***Pell*** and ***J.P.M.*** exception to natural-parent presumption may no longer be viable. The ***Waites*** opinion emphatically concluded that, "[u]nder the present state of the law, in the absence of rebutting the natural-parent presumption via clear and

14

convincing evidence of abandonment, desertion, immoral conduct detrimental to the child, and/or unfitness, 'the court may not consider granting custody to a third party, including one standing *in loco parentis* . . . .'" *Id.* at 314 (quoting *Davis v. Vaughn*, 126 So. 3d 33, 37 (Miss. 2013)). I find that case went too far.

¶44. Here, I concur with the majority to the extent it backs away from the strong language in *Waites* and reaffirms *Pell* and *T.D.M.*'s holding that, under unique circumstances like these, a nonbiological parent's *in loco parentis* status *can* be used to reach an *Albright* custody analysis without having to first rebut the natural-parent presumption.

**RANDOLPH, C.J., BEAM, CHAMBERLIN AND GRIFFIS, JJ., JOIN THIS OPINION.**

15